[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-11456

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

XAVIER RASHAD BROOKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:21-cr-00001-HL-TQL-1

_____

Before WILSON, GRANT, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Xavier Rashad Brooks, a felon, pled guilty to one count of possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Following his guilty plea, the district court sentenced Brooks to 100-months imprisonment. Brooks appeals, arguing that the district court erred for three reasons. First, Brooks argues that the district court improperly determined that his base offense level was 26 under U.S.S.G. § 2K2.1(a)(1). Second, Brooks argues that the district court incorrectly applied a two-level enhancement to his offense level under U.S.S.G. § 2K2.1(b)(4)(A)—an enhancement that is applicable if a "firearm was stolen." Finally, Brooks argues that the district court incorrectly applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B)—an enhancement for defendants who "possessed any firearm . . . in connection with another felony offense." After careful review, and with the benefit of oral argument, we affirm Brooks's sentence.

## I.    BACKGROUND

On October 12, 2020, a Remerton, Georgia police officer spotted a Lincoln Navigator believed to be related to a shooting in Valdosta, Georgia. The officer observed two males—Xavier Brooks and Alex Hollis—walk from a nearby apartment building and approach the Navigator. The officer spoke with Hollis, but Brooks stood behind a nearby Kia automobile and concealed his hands. The officer ordered Brooks to walk toward the officer and to show his hands, but Brooks ducked behind the Kia before

complying with the officer's order.  Additional law enforcement arrived and discovered a Glock pistol behind the Kia.  The officers attempted to detain Brooks, but he ran from the scene.

The officers obtained an arrest warrant for Brooks based on his possession of the Glock as a felon.  On October 15, 2020, law enforcement returned to the apartment building and arrested Brooks.  On January 13, 2021, a federal grand jury indicted Brooks for one count of possession of a firearm by a felon under 18 U.S.C. § 922(g)(1).

Four days later, on January 17, 2021, officers stopped Brooks's vehicle in Valdosta, Georgia after Brooks failed to use a turn signal.  Dispatch confirmed an outstanding warrant for the § 922(g)(1) charge and another warrant for obstruction under Georgia law.  The officers detained Brooks, searched his vehicle, and discovered a stolen Smith & Wesson pistol under the driver's seat.  The State of Georgia charged Brooks with theft by receiving stolen property, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B), based on the stolen Smith & Wesson pistol in his possession.

Brooks initially pled not guilty to the federal charge related to his possession of the Glock, but Brooks later changed his plea to guilty.  In light of Brooks's guilty plea, a probation officer prepared a presentence investigation report ("PSI"), which recommended that Brooks receive a sentence of 108 to 120-months' imprisonment. The PSI started with a base offense level of 26 under U.S.S.G. § 2K2.1(a)(1) because Brooks had two previous felony convictions for crimes of violence—a 2011 conviction for armed robbery,

O.C.G.A. § 16-8-41, and a 2008 conviction for robbery, O.C.G.A. § 16-8-40.  Next, the PSI recommended a two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A) because Brooks possessed a stolen firearm when he possessed the stolen Smith & Wesson.  The PSI also recommended a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because Brooks possessed the stolen Smith & Wesson in connection with another felony offense, namely the Georgia felony of theft by receiving stolen property, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B).  The proposed enhancements adjusted Brooks's offense level to 32.

The PSI then recommended that the district court reduce Brooks's offense level by three under U.S.S.G. § 3E1.1(a) and (b) because Brooks accepted responsibility and timely entered a guilty plea.  This reduced Brooks's total offense level to 29.  The PSI also determined that Brooks had a criminal history category of III.  With a criminal history category of III and a total offense level of 29, Brooks's advisory sentencing range was 108 to 120-months' imprisonment.

Brooks objected to the PSI on three grounds.  First, Brooks argued that the PSI improperly recommended a two-level enhancement under § 2K2.1(b)(4)(A) based on his possession of a stolen pistol.  Brooks noted that he pled guilty to the § 922(g)(1) charge related to his October 2020 possession of the Glock and argued that the later possession of the stolen Smith & Wesson was not "relevant conduct" under U.S.S.G. § 1B1.3.

Second, Brooks argued that the PSI incorrectly recommended a four-level enhancement under § 2K2.1(b)(6)(B), which provides for a four-level enhancement if Brooks "possessed" a "firearm" "in connection with another felony offense." The PSI reasoned that Brooks possessed the stolen Smith & Wesson "in connection with another felony offense" because Georgia criminalizes theft by receiving stolen property, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B). Thus, by receiving and possessing the stolen Smith & Wesson, Brooks both possessed a firearm as a felon—in violation of federal law, § 922(g)(1)—and committed theft by receiving stolen property—in violation of Georgia law, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B). Brooks objected to this enhancement on two grounds. First, he reiterated that the possession of the stolen Smith & Wesson was not relevant to his § 922(g)(1) conviction because that conviction related to the Glock, which was not stolen, and that occurred three months earlier. Next, Brooks argued that he did not possess the stolen Smith & Wesson "in connection with" the theft-by-receiving offense. According to Brooks, he did not use the Smith & Wesson to facilitate the theft-by-receiving offense because the Smith & Wesson was itself the object of the theft. And because the Smith & Wesson did not facilitate the theft-by-receiving offense, Brooks argued that he did not possess the Smith & Wesson "in connection with another felony offense," § 2K2.1(b)(6)(B).

Third, Brooks argued that the PSI started with an incorrect base offense level. Brooks contended that his base offense level should be 22, rather than 26, because his 2008 conviction for

robbery, O.C.G.A. § 16-8-40, did not qualify as a "crime of violence" under § 2K2.1(a)(1).

At sentencing, the district court overruled Brooks's objections and accepted the PSI as presented. However, the district court varied downward by two offense levels. The downward variance yielded a range of 87 to 108 months in prison, and the court sentenced Brooks to 100 months in prison. Brooks timely appealed.

## II.    STANDARD OF REVIEW

Generally, we review "a district court's sentencing-range calculation under an abuse-of-discretion standard." *United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Id.* (quoting *United States v. Register*, 678 F.3d 1262, 1266 (11th Cir. 2012)). Additionally, "[w]e review *de novo* whether a defendant's prior conviction qualifies as a 'crime of violence' under the Sentencing Guidelines." *United States v. Harris*, 586 F.3d 1283, 1284 (11th Cir. 2009). Finally, we review a district court's determination that an act qualifies as "relevant conduct" under U.S.S.G. § 1B1.3 for clear error. *Siegelman*, 786 F.3d at 1332.

## III.    ANALYSIS

On appeal, Brooks raises the same three objections that he raised to the district court. First, he argues that his base offense level is 22—rather than 26—under U.S.S.G. § 2K2.1(a) because his 2008 robbery conviction was not a conviction for a crime of

violence. Second, he argues that his possession of a stolen pistol in January 2021 did not warrant a two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A). Finally, he argues that a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) was improper because he did not possess a firearm "in connection with" theft by receiving stolen property, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B).

### A. The Base Offense Level Under U.S.S.G. § 2K2.1(a)(1)

Section 2K2.1 prescribes how courts should calculate the offense level for defendants who, like Brooks, are convicted under 18 U.S.C. § 922(g)(1). Of note to this case, section 2K2.1(a)(1) requires a base-offense level of 26 if:

> (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine . . . ; and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a *crime of violence* or a controlled substance offense.

(Emphasis added). The district court determined that a base offense level of 26 was appropriate under § 2K2.1(a)(1) because Brooks was previously convicted of two crimes of violence before he possessed the Glock in October 2020. Specifically, Brooks was convicted of armed robbery, O.C.G.A. § 16-8-41, in 2011 and robbery, O.C.G.A. § 16-8-40, in 2008. Brooks challenges the district court's conclusion on the grounds that his 2008 conviction for robbery, O.C.G.A. § 16-8-40, was not a conviction for a "crime of violence."

Section 4B1.2(a) defines the term "crime of violence," stating:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). Subsection (a)(1) is commonly known as the "elements clause," and subsection (a)(2) is known as the "enumerated offenses clause." *United States v. Eason*, 953 F.3d 1184, 1187–88 (11th Cir. 2020).

To determine whether Brooks's 2008 conviction for robbery, O.C.G.A. § 16-8-40, is a "crime of violence" under either the enumerated offenses clause or the elements clause, we apply a "categorical approach." *Eason*, 953 F.3d at 1189. This categorical approach looks strictly "to the statutory definition of the offense rather than at the particular facts underlying the defendant's conviction." *Id.*; *accord United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017). Additionally, when applying the categorical approach, we "presume that the conviction 'rested upon nothing more than the least of the acts' criminalized" by the statute. *Moncrieffe v. Holder*,

569 U.S. 184, 190–91 (2013) (alterations adopted) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).  In other words, we look to "'the elements of the statute of conviction' and determine if the least of the acts criminalized qualifies as a crime of violence." *United States v. Harrison*, 56 F.4th 1325, 1331 (11th Cir. 2023) (quoting *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020)).

Based on the categorical approach, Brooks argues that robbery under O.C.G.A. § 16-8-40 is not a crime of violence.  Section 16-8-40(a) states:

> (a) A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another:
>
> (1) By use of force;
>
> (2) By intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another; *or*
>
> (3) By sudden snatching.

(Emphasis added).  Brooks contends that, under this statute, a person could be guilty of robbery "by sudden snatching," which is the least of the acts criminalized in the statute and is not a crime of violence.  Thus, Brooks argues, his conviction for robbery under section 16-8-40 is not a conviction for a crime of violence.

The government concedes that robbery by sudden snatching is not a crime of violence, but maintains that Brooks's argument fails because section 16-8-40 is a "divisible" statute.  *See Harrison*, 56

F.4th at 1336 (holding that section 16-8-40 is divisible). A "divisible" statute "lists multiple, alternative elements, and so effectively creates 'several different crimes'" in one provision. *Descamps v. United States*, 570 U.S. 254, 264 (2013) (alterations adopted) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). When a statute is "divisible," we do not employ the usual "categorical approach," *Mathis v. United States*, 579 U.S. 500, 505–06 (2016), because in that case a "single statute" effectively prohibits "multiple crimes" at once. *Id.* at 505. Thus, if "a statute is divisible," we employ a "'modified categorical approach' and look to a 'limited class of documents' to determine the offense underlying a defendant's prior conviction. We then determine if the offense underlying a defendant's prior conviction is a crime of violence by applying the categorical approach only to that offense." *Harrison*, 56 F.4th at 1331 (citation omitted) (quoting *Mathis*, 579 U.S. at 505–06).

Applying the "modified categorical approach" to section 16-8-40, the government argues that *Shepard* documents[1] show Brooks was convicted in 2008 of robbery by "use of force," O.C.G.A. § 16-8-40(a)(1), not robbery by "sudden snatching," *id.* § 16-8-40(a)(3). And if Brooks was convicted of robbery by "use of force," *id.* § 16-8-40(a)(1), then—according to the government—Brooks is guilty of

---

[1] *Shepard* documents are records related to a defendant's prior convictions, including charging documents, plea agreements, plea-colloquy transcripts, and other comparable judicial records. *Shepard v. United States*, 544 U.S. 13, 26 (2005).

22-11456                Opinion of the Court                11

a "crime of violence" for the purposes of U.S.S.G. § 2K2.1(a)(1). Both of the government's arguments are correct.

First, *Shepard* documents establish that, in 2008, Brooks was convicted of robbery by force. O.C.G.A. § 16-8-40(a)(1). The record contains several *Shepard* documents related to Brooks's 2008 conviction, including a copy of the indictment, a final-disposition form, and a motion to nolle prosequi some of the counts in the indictment. The indictment charged Brooks with two counts of armed robbery*, id.* § 16-8-41, and two counts of possession of a firearm during the commission of a crime*, id.* § 16-11-106. Count I of the indictment alleged that Brooks "did . . . unlawfully, knowingly, willfully, and intentionally with intent to commit theft, take property of another, to-wit: $20.00 in U.S Currency, from the immediate presence of Bill Abercrombie, *by use* of a certain *knife and handgun* he had on his person . . . ." (Emphasis added). Then, a final-disposition form—which is attached to the indictment—contains a note documenting that Brooks pled "guilty" to "Ct 1 only as Robbery," and this note was signed and dated by Brooks and his attorney. Likewise, in a motion to nolle prosequi the other counts in the indictment, Brooks stated that he pled guilty to "count(s) 1 as Robbery." Finally, the government provides a transcript of the plea colloquy related to Brooks' 2008 conviction.[2] According to the

---

[2] Although this transcript is not in the record, we take judicial notice of it under Federal Rule of Evidence 201(b)(2). Additionally, at oral argument, Brooks's counsel expressly stated that Brooks had no objection to this Court taking judicial notice of the plea colloquy transcript.

transcript, the state prosecutor said, "the facts of that case would show that on June 24, 2007, Mr. Brooks did take $20 from Bill Abercrombie *by using force*." (Emphasis added). The state court then addressed Brooks, stating, "Mr. Brooks, you've heard the statements of the District Attorney in your case. Is that about what happened?" Brooks responded, "Yes, sir." The court said, "All right, is there anything you want to add to or take away from what he just said?" "No, sir," Brooks stated. The court then asked, "And are you guilty of this charge of robbery under count one of your indictment?" "Yes, sir," Brooks admitted. In light of these *Shepard* documents, Brooks's 2008 conviction was a conviction for robbery by force, as prohibited by O.C.G.A. § 16-8-40(a)(1).

The elements clause of § 4B1.2(a) says that a "crime of violence" is any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Brooks's 2008 conviction was for robbery "[b]y use of force." O.C.G.A. § 16-8-40(a)(1). Thus, Brooks's 2008 conviction was for a "crime of violence" as that term is used in § 2K2.1(a)(1) of the Sentencing Guidelines.[3]

---

[3] Because we hold that robbery by force, O.C.G.A. § 16-8-40(a)(1), is a "crime of violence" under the elements clause of U.S.S.G. § 4B1.2(a), we have no need to discuss whether robbery by force is a "crime of violence" under the enumerated offenses clause. *Cf. Harrison*, 56 F.4th at 1336 n.5. But even if we did analyze the enumerated offenses clause, we would readily conclude that robbery by force is a "crime of violence" for the same reasons that we determined that robbery by intimidation is a "crime of violence" in *Harrison*. *See id*. at 1336.

Overall, the district court did not err by determining that Brooks's base offense level was 26. *Shepard* documents establish that Brooks' 2008 conviction was for robbery by force, O.C.G.A. § 16-8-40(a)(1), and robbery by force is a "crime of violence," § 2K2.1(a)(1). Thus, we affirm as to this issue.

## B. The Two-Level Enhancement Under U.S.S.G. § 2K2.1(b)(4)(A)

Next, Brooks argues that the district court erred by applying a two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A) because Brooks possessed a stolen Smith & Wesson in January 2021. Brooks notes that his federal conviction is only for his possession of a Glock in October 2020. He reasons that the district court erred by taking into account his 2021 possession of the stolen Smith & Wesson while calculating his sentence.

The district court applied a two-level enhancement under § 2K2.1(b)(4)(A) because it determined that Brooks's possession of the stolen Smith & Wesson was "relevant conduct," U.S.S.G. § 1B1.3, even though it was not the conduct that led to his conviction. We review a district court's determination that an act qualifies as "relevant conduct" for clear error. *Siegelman*, 786 F.3d at 1332 (holding that a "relevant-conduct finding" under § 1B1.3 is a factual determination and reviewed for clear error).

"When calculating a defendant's sentencing range under the Guidelines, the sentencing court must consider all 'relevant conduct' as defined in § 1B1.3" of the Sentencing Guidelines. *Id.* Importantly, "relevant conduct is broadly defined to include both

uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence." *Id.* The term "relevant conduct" also encompasses "acts and omissions" "that were part of the *same course of conduct* or common scheme or plan as the offense of conviction." § 1B1.3(a)(2) (emphasis added). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of [an] . . . ongoing series of offenses." § 1B1.3 cmt. n.5(B)(ii). "Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other" include (1) "the degree of similarity of the offenses," (2) "the regularity (repetitions) of the offenses," and (3) "the time interval between the offenses." *Id.*

The district court did not clearly err by concluding that Brooks's possession of the stolen Smith & Wesson was part of the "same course of conduct" as his possession of the Glock. Regarding the first factor, the offenses were "similar" to each other because they were identical—Brooks possessed a firearm as a felon when he possessed the Glock and when he possessed the Smith & Wesson. As to the second factor, there admittedly was not a high "regularity" of this offense because the incident involving the stolen Smith & Wesson was the only additional incident that the government cited in which Brooks possessed a firearm. However, this is not dispositive because "[w]hen one of the above factors is absent," a court may make a "same course of conduct" finding through "a stronger presence of at least one of the other factors."

§ 1B1.3 cmt. n.5(B)(ii). Finally, regarding the third factor, Brooks possessed the stolen Smith & Wesson merely three months after he possessed the Glock. And the government cites several persuasive decisions holding that defendants engaged in the "same course of conduct" over longer periods of time between incidents. *See United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998) (upholding as relevant conduct possession of three firearms on two separate occasions within a six- to nine-month period); *United States v. Brummett*, 355 F.3d 343, 345 (5th Cir. 2003) (possession of four firearms on three separate occasions within a nine-month period); *United States v. Windle*, 74 F.3d 997, 1000–01 (10th Cir. 1996) (possession of illegal firearms over four- to five-month period).

Overall, we conclude that the district court did not clearly err by holding that Brooks's possession of the stolen Smith & Wesson was "relevant conduct." Thus, we affirm the district court's two-level enhancement under U.S.S.G § 2K2.1(b)(4)(A).

## C. The Four-Level Enhancement Under U.S.S.G. § 2K2.1(b)(6)(B)

Finally, Brooks argues that the district court erred by applying a four-level increase under U.S.S.G. § 2K2.1(b)(6)(B). Section 2K2.1(b)(6)(B) provides:

> If the defendant . . . used or possessed any firearm or ammunition *in connection with another felony offense*; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

(Emphasis added). The district court determined that § 2K2.1(b)(6)(B) applied because Brooks possessed a firearm "in connection with another felony offense"—namely, theft by receiving stolen property in violation of Georgia law, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B).

Brooks advances three arguments on appeal. First, he again argues that receipt of the stolen Smith & Wesson was not relevant conduct. Second, he argues that the district court clearly erred by concluding that he received a stolen firearm. Finally, he argues that even if he did receive a stolen firearm, his possession of the firearm was not "in connection with" his theft-by-receiving offense. We address each argument in turn.

1. *Receipt of the Stolen Smith & Wesson is "Relevant Conduct" Under U.S.S.G. § 1B1.3.*

Brooks's first argument rests on the same reasoning as his argument for the inapplicability of § 2K2.1(b)(4)(A). Brooks argues that his receipt and possession of the stolen Smith & Wesson in January 2021 was not relevant to his possession of the Glock in October 2020. For the reasons explained above, however, this argument is incorrect, as "[r]elevant conduct" includes "acts and omissions" "that were part of the same course of conduct . . . as the offense of conviction." § 1B1.3(a)(2). As discussed, the district court did not clearly err in determining that Brooks's possession of the stolen Smith & Wesson in January 2021 was a part of the "same course of conduct" as his possession of the Glock in October 2020.

### 2. The District Court Did Not Clearly Err by Concluding that Brooks Received a Stolen Firearm.

Next, Brooks argues that the district court erred by concluding that he committed theft by receiving stolen property, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B), when he possessed the stolen Smith & Wesson. For purposes of the sentencing determination, the district court could make any finding of fact that was supported "by a preponderance of the evidence." *See United States v. Slaton*, 801 F.3d 1308, 1319 n.7 (11th Cir. 2015). And we review the district court's factual finding for clear error. *Siegelman*, 786 F.3d at 1332.

The district court did not clearly err in determining—by a preponderance of the evidence—that Brooks committed theft by receiving stolen property, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B). The PSI, which was "considered" and "accepted" by the district court, documented that the Smith & Wesson recovered from Brooks's car in January 2021 was stolen. Also, the PSI documented that the stolen Smith & Wesson was discovered under the driver's seat of Brooks's car. And, as the government notes, Brooks has never disputed any of the facts in the PSI. In light of this evidence, the district court did not clearly err in determining that Brooks committed the felony offense of theft by receiving stolen property under O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B).

### 3. The District Court Correctly Concluded that Brooks "Possessed" a "Firearm" "in Connection with Another Felony Offense."

Finally, Brooks argues that the district court incorrectly applied the four-level enhancement under § 2K2.1(b)(6)(B). The

district court reasoned that Brooks possessed the stolen Smith & Wesson "in connection with another felony offense," § 2K2.1(b)(6)(B), because his receipt of the pistol also made him guilty of theft by receiving stolen property under Georgia law, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B). Brooks argues that the district court read § 2K2.1(b)(6)(B) improperly because his possession of the stolen Smith & Wesson did not facilitate the theft-by-receiving offense. According to Brooks, because the gun was itself the stolen property in question, it could not facilitate its own theft.

The parties' dispute raises a question of first impression in this Circuit: whether, under § 2K2.1(b)(6)(B), a felon possesses a firearm "in connection with" theft by receiving stolen property, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B), when the stolen property the felon receives is the stolen firearm itself. As far as we are aware, only one other Circuit has addressed this question.

In *United States v. Canamore*, 916 F.3d 718 (8th Cir. 2019), a felon pled guilty to possessing a firearm in violation of § 922(g)(1). *Id.* at 719. At sentencing, the district court applied a "four-level increase under § 2K2.1(b)(6)(B)" because the defendant possessed the stolen firearm "in connection with another felony offense—theft by receiving under Arkansas law." *Id.* at 720. On appeal, the Eighth Circuit affirmed. *Id.* at 721. The Eighth Circuit explained that § 2K2.1(b)(6)(B) directs courts to increase a defendant's offense level by four if he "used or possessed any firearm or ammunition in connection with another felony offense." *Id.* (quoting § 2K2.1(b)(6)(B)). The court noted that the guideline's

commentary defines "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* (quoting § 2K2.1 cmt. n.14(C)). The court explained that "[t]heft by receiving stolen property was a felony under Arkansas law because the stolen property was a firearm," and the court concluded that the district court properly applied the enhancement. *Id.* (citing Ark. Code Ann. § 5-36-106). That decision is not binding, of course, and we are obligated to independently consider the question presented to us. But here, we are convinced that the Eighth Circuit's conclusion is correct in light of the text of § 2K2.1(b)(6)(B) and our precedents.[4]

We start with the text. Section 2K2.1(b)(6)(B) provides for a four-level enhancement if the defendant "used or possessed any firearm or ammunition *in connection with* another felony offense." (Emphasis added). To correctly interpret this provision, we must read the phrase "in connection with" according to its ordinary and

---

[4] In its brief, the United States partially relies on Application Note 14 of Guideline § 2K2.1. *See* U.S.S.G. § 2K2.1 cmt. n.14. But in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc), we held that we may not defer to commentary attached to a sentencing guideline unless the text of the guideline is itself "genuinely ambiguous." *Id.* at 1274–75 (quoting *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019)). Neither Brooks nor the United States discussed *Dupree* in their briefs or at oral argument. Accordingly, in this opinion, we do not address the applicability of the Application Note 14 after *Dupree*, and we do not address whether section 2K2.1(b)(6)(B) is "genuinely ambiguous" under *Dupree*.

natural meaning. *See United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) (holding that "courts should give" the phrase "in connection with" its "ordinary meaning");[5] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012) (noting that the ordinary-meaning canon "is the most fundamental semantic rule of interpretation"). Controlling precedent also requires us to reject narrow constructions of that phrase. *See Rhind*, 289 F.3d at 695; *United States v. Smith*, 480 F.3d 1277, 1280 (11th Cir. 2007) ("[T]he term 'in connection with' in U.S.S.G. § 2K2.1(b)(5) [now, § 2K2.1(b)(6)(B)] should be given its ordinary and natural meaning, and we have expressly rejected a more restrictive interpretation.").

In light of these principles, "we have held that, in certain circumstances, mere possession of a firearm can be enough to apply a sentencing enhancement" under § 2K2.1(b)(6)(B). *United States v. Jackson*, 276 F.3d 1231, 1234–35 (11th Cir. 2001); *see also Rhind*, 289 F.3d at 695 (holding that "the firearm does not have to facilitate the underlying offense" to satisfy the "in connection with" requirement). A defendant can possess a firearm "in connection with" another felony offense if the firearm "potentially embolden[s]" or has the potential of facilitating the other felony offense. *Jackson*, 276 F.3d at 1234; *United States v. Carillo-Ayala*, 713 F.3d 82, 93–94 (11th

---

[5] The provision at issue in *Rhind*—U.S.S.G. § 2K2.1(b)(5)—was the same provision at issue in this case. In 2006, the Sentencing Commission redesignated U.S.S.G. § 2K2.1(b)(5) as U.S.S.G. § 2K2.1(b)(6). *See* U.S.S.G. App. C, Amend. 691 (Nov. 1, 2006).

Cir. 2013).  This includes circumstances when the firearm is "a fruit and not an instrument of the crime."  *Carillo-Ayala*, 713 F.3d at 94 (citing *United States v. Young*, 115 F.3d 834, 838 (11th Cir. 1997) (per curiam)).

In *United States v. Young*, for example, we analyzed the meaning of the phrase "used or possessed the firearm or ammunition in connection with a crime of violence" under Guideline § 4B1.4(b)(3)(A).  115 F.3d at 836–38.  James Young, the defendant, burglarized a home, and while inside, he found and stole a firearm.  *Id.* at 835.  The district court applied the enhancement under § 4B1.4(b)(3)(A), but Young appealed and argued that he did not possess the firearm "'in connection with' the burglary."  *Id.* at 835–36.  The government responded that the term "in connection with"—when interpreted according to its "ordinary meaning"—included Young's "possess[ion] [of] the firearm during the commission of the burglary" even if he "later obtained the firearm while in the dwelling."  *Id.* at 836.  We accepted the government's argument and affirmed the district court, explaining that the phrase "in connection with" "does not exclude possession of the firearm as the fruit of the crime which the possessor is contemporaneously committing."  *Id.* at 837.  We also relied partially on the Fifth Circuit's observation in *United States v. Guerrero*, 5 F.3d 868 (5th Cir. 1993), that "[i]f armed burglars encounter the occupants of a home or law enforcement officials, it makes little difference how the burglars obtained their firearms."  *Id.* at 837–38 (quoting *Guerrero*, 5 F.3d at 873).

Later, in *United States v. Matos-Rodriguez*, 188 F.3d 1300 (11th Cir. 1999), we noted that *Young* afforded "the phrase 'in connection with' an expansive construction." *Id*. at 1308 (citing *Young*, 115 F.3d at 836–38). *Matos-Rodriguez* characterized *Young* as holding, "in effect," "that it did not matter whether [the defendant] had entered the dwelling with the gun in his hand, or obtained it while burglarizing the house, as a fruit of the crime." *Id*. And, in *United States v. Carillo-Ayala*, we characterized *Young* as holding that the defendant "possessed [a] rifle 'in connection with' the burglary during which he stole it, although it was a fruit and not an instrument of the crime." 713 F.3d at 94 (citing *Young*, 115 F.3d at 838); *see also United States v. Hedger*, 354 F.3d 792, 793, 795 (8th Cir. 2004) (holding that the defendant possessed a firearm "in connection with" another felony offense when he stole the firearm from a gun shop).

To be sure, neither *Young*, *Matos-Rodriguez*, nor *Carillo-Ayala* ruled on the meaning of the phrase "in connection with" under § 2K2.1(b)(6)(B). *See Young*, 115 F.3d at 836 (U.S.S.G. § 4B1.4(b)(3)(A)); *Matos-Rodriguez*, 188 F.3d at 1304–05 (U.S.S.G. § 2B5.1(b)(3) [now, § 2B5.1(b)(4)]); *Carillo-Ayala*, 713 F.3d at 92 (U.S.S.G. § 5C1.2(a)(2)). But if "two guideline provisions use the same language, we presume they have the same meaning and generally interpret them the same way." *United States v. Martinez*, 964 F.3d 1329, 1338 (11th Cir. 2020); *accord United States v. Gordillo*, 920 F.3d 1292, 1299 (11th Cir. 2019); *United States v. Perez*, 366 F.3d 1178, 1182 (11th Cir. 2004). Consistent with this principle, we have previously relied on *Young*, *Matos-Rodriguez*, and *Carillo-Ayala* to interpret the meaning of "in connection with" under § 2K2.1(b)(6)(B).

*See Jackson*, 276 F.3d at 1234 (citing *Matos-Rodriguez*, 188 F.3d at 1308); *Rhind*, 289 F.3d at 695 (citing *Young*, 115 F.3d at 838; *Matos-Rodriguez*, 188 F.3d at 1308–09); *Smith*, 480 F.3d at 1280 (citing *Young*, 115 F.3d at 838); *Martinez*, 964 F.3d at 1337–38 (citing *Carillo-Ayala*, 713 F.3d 82).

We therefore hold that a defendant possesses a firearm "in connection with another felony offense," § 2K2.1(b)(6)(B)—even if the firearm itself is the "fruit" of the other offense—if it facilitates, or has the potential of facilitating, the other offense. *See Carillo-Ayala*, 713 F.3d at 94 (citing *Young*, 115 F.3d at 838). In this case, the stolen Smith & Wesson was the fruit of Brooks's theft-by-receiving offense, O.C.G.A. §§ 16-8-7, 16-8-12(a)(6)(B). The firearm also had the potential of facilitating the theft offense. When considering a "firearm's *potential* use," "there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened." *Carillo-Ayala*, 713 F.3d at 92 (emphasis original). In *Matos-Rodriguez*, for instance, we "found a connection" between a firearm and a counterfeiting offense even where the defendant "*could have*"—but "did *not*"—"use[] the firearm to protect his criminal activity." *Id.* at 94 (emphasis in the original) (discussing *Matos-Rodriguez*, 188 F.3d 1300); *see also Young*, 115 F.3d at 837–38 ("Possession of firearms obviously increases the *danger of violence* whether or not such weapons are actually used." (emphasis original) (quoting *Guerrero*, 5 F.3d at 873)). We find a connection here because, like the defendant in *Young*, Brooks could have used the firearm "during the commission of" the theft if he encountered the police or the firearm's rightful owner. *See Young*,

115 F.3d at 837–38.  The mere fact that the firearm "was a fruit and not an instrument of the crime" does not undermine the firearm's connection to the offense.  *Carillo-Ayala*, 713 F.3d at 94.

Our learned colleague, Judge Wilson, views this case differently.  He emphasizes that our prior precedents apply the enhancement under § 2K2.1(b)(6)(B) only when the defendant's possession of a firearm "altered the nature of the *other* offense."  Wilson Dis. Op. at 5 (emphasis in the original).  He also emphasizes that "a firearm does not always facilitate another felony offense simply by being the fruit of the other felony offense."  *Id.* (emphasis omitted).  And we agree.  *See supra* at 24.  Even if a firearm is the "fruit" of the other felony offense, it also must facilitate—or have the potential to facilitate—the other felony offense to be possessed "in connection with" that other felony offense.  *See Carillo-Ayala*, 713 F.3d at 92–94 (citing *Young*, 115 F.3d at 838).

We part ways, however, with the dissent's view that Brooks's possession of the stolen Smith & Wesson did not alter the theft-by-receiving offense.  The dissent emphasizes that "[t]he nature of Brooks's possession of the stolen Smith & Wesson was not altered by his possession of it."  Wilson Dis. Op. at 6.  Of course, *that* limited point is true.  But that does not speak to the question at issue here—whether the stolen Smith & Wesson had the potential to facilitate the theft-by-receiving offense.  *See* § 2K2.1(b)(6)(B); *Carillo-Ayala*, 713 F.3d at 93–96.  Although the Smith & Wesson at issue here "was a fruit and not an instrument of" the theft-by-receiving offense, the Smith & Wesson still had the potential to facilitate its

own theft because it was "availabl[e] for use as a weapon" and "there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened." *Id.* at 92, 94, 96; *see also Rhind*, 289 F.3d at 695 (applying the (b)(6)(B) enhancement even when the defendants left an unloaded shotgun in the trunk of their car because "the defendants could have easily obtained ammunition for the shotgun to promote their counterfeiting scheme"). Simply stated, Brooks could have used the firearm that he stole against the police or the weapon's owner if they attempted to thwart Brooks's crime.

The dissent counters that the firearm had no potential to facilitate Brooks's theft-by-receiving offense because Brooks did not possess the stolen Smith & Wesson "before or during" the theft offense. *See* Wilson Dis. Op. at 6. Thus, the firearm was not "available for use" during the commission of its own theft. *Id.* But the dissent's argument rests on a misunderstanding of theft-by-receiving under Georgia law. Under section 16-8-7(a), a "person commits the offense of theft by receiving stolen property when he receives, disposes of, *or retains* stolen property which he knows or should know was stolen . . . ." O.C.G.A. § 16-8-7(a) (emphasis added). In 1968, the Georgia legislature added the word "retains" so that section 16-8-7 would apply to more than the "moment in time" when stolen property is bought or received. *Middleton v. State*, 846 S.E.2d 73, 80–81 (Ga. 2020). The statute was amended so that it would also prohibit "retain[ing] possession of" goods that a person knows are stolen. *Id.* So, Brooks's possession of the stolen Smith & Wesson *did* have the potential to facilitate the theft-by-receiving offense.

Brooks could have used the Smith & Wesson to ensure his continued retention of the firearm. *See* O.C.G.A. § 16-8-7(a).[6]

To summarize, Brooks's possessed a firearm "in connection with" the crime of theft by receipt of stolen property because the firearm was acquired during the theft offense and had the potential to facilitate that offense. *See* U.S.S.G. § 2K2.1(b)(6)(B). Accordingly, we affirm the district court's four-level enhancement under § 2K2.1(b)(6)(B).

## IV.        CONCLUSION

For the reasons stated, we affirm Brooks's sentence.

**AFFIRMED.**

---

[6] The dissent also notes that the United States requested a two-level downward variance at sentencing because of the unusual application of the (b)(6)(B) enhancement here. Wilson Dis. Op. at 7–8. But we have an obligation to apply § 2K2.1(b)(6)(B) according to its plain text, which sometimes encompasses unusual applications. For example, in *Smith v. United States*, 508 U.S. 223 (1993), the Supreme Court held that a defendant "use[d]" a firearm "in relation to" a drug trafficking crime under 18 U.S.C. § 924(c)(1) when he tried to trade the firearm for drugs. 508 U.S. at 228–39. In coming to that conclusion, the Supreme Court rejected the defendant's argument that § 924(c)(1) was inapplicable because the defendant never "use[d]" the firearm as a weapon, even though that "is how firearms most often are used." *Id.* at 228–29. We have repeatedly used *Smith* to interpret the phrase "in connection with" for purposes of the Sentencing Guidelines, including Guideline § 2K2.1(b)(6)(B). *See, e.g.*, *Martinez*, 964 F.3d at 1336–38; *Young*, 115 F.3d at 837 ("*Smith* persuades us that the possession of a firearm 'in connection with' a crime of violence does not exclude possession of the firearm as the fruit of the crime which the possessor is contemporaneously committing.").

GRANT, Circuit Judge, Concurring:

I join the majority opinion in full. For the reasons the majority describes, the district court properly found that Xavier Brooks's 2008 state-law conviction for robbery under O.C.G.A. § 16-8-40 qualifies as a "crime of violence" under the modified categorical approach, and it properly applied a two-level enhancement under U.S. Sentencing Guidelines § 2K2.1(b)(4)(A) because Brooks's possession of a stolen Smith & Wesson pistol was "relevant conduct" to his possession of the Glock for which he was charged a mere three months earlier.

I also agree that the district court properly applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because Brooks possessed a stolen firearm "in connection with" the felony offense in which he acquired it—theft by receiving stolen property. As the majority correctly holds, this Circuit's precedent supports applying this enhancement when a defendant's firearm "facilitates, or has the potential of facilitating" another felony offense, even if that firearm was the fruit and not the instrument of that other felony offense. Majority at 23; *see also United States v. Carillo-Ayala*, 713 F.3d 82, 93–94 (11th Cir. 2013). The phrase "in connection with" has a broad meaning, and is not limited to cases where the firearm is actually used as a weapon during the commission of the other felony offense. Majority at 19–21.

Instead, the firearm's mere presence during the commission of the other felony may be enough. As this Circuit has previously explained, a firearm facilitates or has the potential to facilitate

another felony if its presence "embolden[s] an actor who had the ability to display or discharge the weapon." *Carillo-Ayala*, 713 F.3d at 96. And a gun is a gun, whether the thief brings it himself to the scene of the crime or finds and takes possession of it there. *See United States v. Young*, 115 F.3d 834, 837 (11th Cir. 1997). Either way, it has the potential to help the thief to carry out his crime.

So far, I have simply restated the analysis given in the majority's well-reasoned opinion. My main purpose in writing separately, however, is to explain that there is another, simpler ground supporting application of the § 2K2.1(b)(6)(B) enhancement in this case. Our cases interpreting the meaning of the phrase "in connection with" as used in the Guidelines borrow from the Supreme Court's decision in *Smith v. United States*, 508 U.S. 223 (1993), which interpreted the meaning of the materially similar statutory phrase "in relation to." *See Young*, 115 F.3d at 836–37; *Carillo-Ayala*, 713 F.3d at 93–94, 94 n.11.[1] There, Smith was an aspiring drug dealer who agreed to trade his submachine gun to an undercover agent in exchange for cocaine. *Smith*, 508 U.S. at 225–26. He was convicted under 18 U.S.C. § 924(c)(1) which, at the time, criminalized the

---

[1] The Court does not decide today whether § 2K2.1(b)(6)(B) is ambiguous and whether Application Note 14 applies after this Court's en banc decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023). Majority at 19 n.4. I note, however, that the Sentencing Commission's explanation accompanying Note 14's definition of the phrase "in connection with" helpfully states that it adopts its language from *Smith*. *See* U.S.S.G. app. C, amend. 691 (Nov. 1, 2006) (amending § 2K2.1).

"use[]" of a firearm "during and in relation to any crime of violence or drug trafficking crime." *See id.* at 227.

The Supreme Court affirmed. *Id.* at 241. It concluded that the phrase "in relation to" was broad, and that for a firearm to have been used in relation to a drug trafficking offense, it must "facilitate, or have the potential of facilitating" that offense. *Id.* at 237–38 (alterations omitted and quotation adopted). But the firearm need not do so in "the expected manner"—*i.e.*, as a weapon. *Young*, 115 F.3d at 837; *see Smith*, 508 U.S. at 229. Instead, serving as an item of exchange, to be traded away for drugs, was sufficient. *Carillo-Ayala*, 713 F.3d at 94; *see Smith*, 508 U.S. at 238. Indeed, the Court stated that Smith's use of his firearm met "any reasonable construction" of the phrase "in relation to" because "the gun was an integral part of the transaction. Without it, the deal would not have been possible." *Smith*, 508 U.S. at 238 (alteration adopted and quotation omitted).

Here, Brooks's stolen Smith & Wesson directly facilitated the offense of theft by receiving stolen property; it was the very stolen thing that was received. The firearm was as integral an element to Brooks's felony theft offense as the submachine gun was to Smith's drug trafficking offense. No gun, no crime—"[w]ithout it, the [offense] would not have been possible." *Id.* at 238. And yes, being the stolen item that changes hands is not, perhaps, the "expected manner" in which a gun would facilitate a crime. But *Smith*

4                    GRANT, J., Concurring                    22-11456

instructs that the meaning of "in connection with" is broad, not narrow.[2]

Indeed, our dissenting colleague recognizes that, here, Brooks's "gun was an essential element of the theft, and he would not have been charged with receipt of stolen property had it not been for the gun." Dissent at 6–7. Precisely. The gun facilitated the theft by being an essential element of the crime—without it, Brooks's other felony offense would not be legally complete. *See* O.C.G.A. § 16-8-7(a). For my part, it is hard to think of a tighter connection than that.

⋆    ⋆    ⋆

Brooks possessed the stolen Smith & Wesson "in connection with" another felony offense—theft by receiving stolen property. That firearm facilitated or had the potential to facilitate his other offense both because of its potential for use as a weapon during that crime, and because it was a necessary component of that crime as the stolen property that Brooks received. The district court

---

[2] One difference between *Smith* and Brooks's case is that the defendant in *Smith* committed his drug trafficking offense by agreeing to hand over his firearm, whereas Brooks received the stolen Smith & Wesson. But as we have already explained, the difference between giving a firearm away and receiving one "is not material to" the scope of the phrase "in connection with" as used in the Sentencing Guidelines. *Carillo-Ayala*, 713 F.3d at 96 & n.12. At most, receiving a firearm might not qualify as "use" of that firearm—but § 2K2.1(b)(6)(B) applies if a defendant either "used *or possessed*" a firearm in connection with another felony offense. U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added); *cf. Carillo-Ayala*, 713 F.3d at 96 n.12.

22-11456                GRANT, J., Concurring                5

therefore properly applied the four-level § 2K2.1(b)(6)(B) enhance-ment.  With these additional thoughts, I concur in the majority opinion.

1                WILSON, J., Dissenting in Part                22-11456

WILSON, Circuit Judge, concurring in part and dissenting in part:

I join all but Part III–C–3 of the majority and write separately to explain that I would find the district court erred in its application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Brooks's possession of the firearm was not "in connection with" another felony offense as understood by precedent. Thus, I respectfully dissent as to this issue. First, I explain how my reading of precedent and its application of the phrase "in connection with" differs from the majority and how I would thus find the four-level enhancement inapplicable here. Then, I highlight the consequences of reading the U.S. Sentencing Guidelines[1] as one that applies to this case and others like it.

I.

I begin by summarizing how precedent has applied the Guidelines and its commentary.[2] In *United States v. Young,* our

---

[1] As the majority notes, *United States v. Dupree* redefines how we read the U.S. Sentencing Guidelines and their accompanying notes and commentary. *See* 57 F.4th 1269, 1280 (11th Cir. 2023) (en banc). Discerning the meaning of the Guidelines requires first deploying traditional tools of statutory interpretation; we only look to the commentary if the language of the Guidelines is ambiguous. *Id*. at 1277. The majority suggests that we can interpret § 2K2.1(b)(6)(B) and its use of phrase "in connection with" without addressing the applicability of its commentary. Because the ambiguity of § 2K2.1(b)(6)(B) remains an open question, I include precedential cases that do and do not rely on the commentary to show how in either scenario Brooks's case is distinguishable.

[2] Two sections of § 2K2.1(b)(6)(B)'s commentary prove relevant to the four-level enhancement at issue here. The first details that subsection (b)(6)(B) may

22-11456          W‍ILSON, J., Dissenting in Part                    2

court held[3] "that the possession of a firearm 'in connection with' a crime of violence does not exclude possession of the firearm as the fruit of the crime which the possessor is contemporaneously committing." 115 F.3d 834, 837 (11th Cir. 1997) (per curiam). Then, in *United States v. Matos-Rodriguez*, we "afford[ed] the phrase 'in

---

apply if "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense." U.S.S.G. § 2K2.1 comment. n.14(A). The second explains that it may apply in cases where:

> [A] defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary; and [] in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia. In these cases, application of subsections (b)(6)(B) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense.

*Id.* § 2K2.1 comment. n.14(B).

[3] Our holding in *Young* relied on the Supreme Court's reasoning in *Smith v. United States*, 508 U.S. 223 (1993), the reasoning of which was adopted in Application Note 14(A). *Smith* held that for an enhancement to apply, the interpretation of "in relation to" requires that the firearm, at minimum, "have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." 508 U.S. at 238. With respect to drug trafficking offenses, the firearm "must facilitate, or have the potential of facilitating" the offense. *Id.* (internal quotation marks omitted and alterations adopted). Drawing from *Smith*, *Young* adopted a broader interpretation, holding that "possession of a firearm 'in connection with' a crime of violence does not exclude possession of the firearm as the fruit of the crime," e.g., even when that firearm is used not as a weapon but as a "medium of exchange." *Young*, 115 F.3d at 837.

3                    WILSON, J., Dissenting in Part              22-11456

connection with'" an even more "expansive construction." 188 F.3d 1300, 1308 (11th Cir. 1999). With *Matos-Rodriguez*, we found that the presence of a gun as the defendant delivered counterfeit money was enough to imply a connection, particularly given that the gun could easily have "prevent[ed] theft during a close, face-to-face, hand-to-hand encounter." *Id*. at 1309. Our decision in *United States v. Rhind* applied similar reasoning in finding a four-level enhancement reasonable: "the mere availability and appearance of the firearms could have served to promote the defendants' prolonged criminal episode."[4]  289 F.3d 690, 695 (11th Cir. 2002).

Our interpretation of § 2K2.1(b)(6)(B) has remained consistent. Our decision in *United States v. Carillo-Ayala* explained how a connection between offenses may be found where a defendant "*could have* used the firearm to protect [] criminal activity," focusing on "the firearm's potential for use as a weapon." 713 F.3d 82, 94 (11th Cir. 2013). Later, in *United States v. Bishop*, we further emphasized that the "in connection with" enhancement "applies only if the court finds that 'the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense.'" 940 F.3d 1242, 1250 (11th Cir. 2019) (quoting U.S.S.G. § 2K2.1(b)(6)(B) comment. n.14(A)).

---

[4] In *Rhind*, the record demonstrated that defendants had stolen a vehicle and used this stolen vehicle to travel and pass counterfeit U.S. currency "throughout Florida, Alabama, Louisiana, and Texas." *See* 289 F.3d at 692. The opinion describes this activity as a "prolonged criminal episode." *Id*. at 693.

22-11456          WILSON, J., Dissenting in Part                    4

## II.

With this background, I turn to the question we are asked to resolve: whether possession of a firearm can facilitate the felony of theft by receipt when the gun itself is the crime. Our precedent does not support such a finding.[5]

Our decision in *Young* recognized that "in connection with" is meant to be interpreted broadly. 115 F.3d at 837. But the opinion still delineated limits to our interpretation of the phrase. In reaching its holding, *Young* relied in part on a Fifth Circuit case, discussing how in the commission of a crime like burglary, the presence of a firearm "'increases the *danger of violence*.'" *Id*. (quoting *United States v. Guerrero*, 5 F.3d 868, 873 (5th Cir. 1993)). *Matos-Rodriguez* and *Rhind* similarly considered the *additive* nature of the presence of a firearm in relation to other felony offenses. As detailed above, the defendant in *Matos-Rodriguez* agreed to deliver counterfeit

---

[5] The majority notes that only one other circuit has addressed the question we attempt to answer here. In *United States v. Canamore*, the Eighth Circuit found that the district court had properly applied a four-level enhancement where the defendant had been charged with the felony of "[t]heft by receiving stolen property" under Arkansas law. 916 F.3d 718, 721 (8th Cir. 2019) (per curiam). As in Brooks's case, the stolen property was the same firearm that the defendant had been charged with illegally possessing. *Id*. However, in reviewing the district court's decision, the Eighth Circuit engaged in a limited review of the Guidelines and did not consider the meaning or applicability of the phrase "in connection with." *Id*. While *Canamore* does draw from *United States v. Hedger*, 354 F.3d 792, 795 (8th Cir. 2004), which also presents similar facts, *Hedger* itself offers little reasoning and, as a result, reads as conclusory. I therefore do not find *Canamore* persuasive and would not have our circuit adopt its holding.

money and was found with a firearm during the delivery. 188 F.3d at 1309. In deciding whether the enhancement should apply, the court noted that the presence of the firearm could reasonably be viewed as added protection. *Id.* In *Rhind*, the defendants again were engaged in a counterfeit money offense. 289 F.3d at 692. The presence of an unloaded firearm qualified for a four-level enhancement given that "criminals frequently use unloaded guns to execute crimes" and in *Rhind* specifically, the court found that "defendants could have easily obtained ammunition" to promote their scheme. *Id.* at 695.

The majority uses these cases to emphasize the statute's breadth: a firearm can facilitate a felony by being a fruit—not just an instrument—of that crime. But a firearm does not *always* facilitate another felony offense simply by being the *fruit* of the other felony offense. The majority oversimplifies the issue instead of engaging with the nuances of the underlying facts or contextualizing what it means to be a "fruit" of a crime. More specifically, both the majority and concurrence fail to acknowledge how our precedent focuses on the role firearms played in connection with other, *distinct* offenses. In each of our precedential cases, the firearm was a fruit. However, in each case, we *only applied* the enhancement where we found the firearm to be a fruit that altered the nature of the *other* offense. We found burglary to be rendered more dangerous by the presence of a firearm. *See Young*, 115 F.3d at 837–38. The delivery of counterfeit money is eased by the presence of a firearm. *See Matos-Rodriguez*, 188 F.3d at 1309. Criminal episodes are promoted by the appearance of firearms. *See Rhind*, 289 F.3d at

22-11456              WILSON, J., Dissenting in Part                    6

695. Drug trafficking offenses are facilitated by the presence of firearms. *See Bishop*, 940 F.3d at 1250. But receipt of a stolen firearm? It is not *altered* by the presence of *that same* firearm.

The facts here strengthen this principle. Brooks was discovered in possession of a stolen Smith & Wesson. The State of Georgia charged him with the felony offense of theft by receiving stolen property based on his possession of the stolen firearm. When charging Brooks for a separate offense, the federal government gave him a four-level enhancement under § 2K2.1(b)(6)(B) for possession of the stolen gun "in connection with" another felony offense. But that other felony offense was Georgia's theft by receipt, of that *same* Smith & Wesson. This defies logic and clearly falls outside the ambit of our precedent. The nature of Brooks's possession of the stolen Smith & Wesson was not altered by his possession of it. Thus, Brooks's case is markedly distinguishable from *Young, Matos-Rodriguez, Rhind, Carillo-Ayala,* and *Bishop*.

Brooks's case is further distinguished when we consider the temporal elements at issue. The question of whether the enhancement applied in *Young, Matos-Rodriguez, Rhind,* and *Bishop* necessarily depended on the presence of the firearm before and/or during the commission of the *other* felony offense. In all cases, the firearm was present and available for use in, or to facilitate, the commission of the *other* offense. In Brooks's case, his possession of the firearm was *not* available before or during the commission of the other felony offense because the other offense was the receipt of that same firearm. The gun was an essential element of the theft,

and he would not have been charged with receipt of stolen property had it not been for the gun. The majority tries to get around this by noting that "theft by receipt" as defined by § 16-8-7(a) of the Georgia statute includes the retention of stolen property, writing "Brooks's possession of the stolen Smith & Wesson *did* have the potential to facilitate the theft-by-receiving offense" because Brooks retained the gun. Majority at 25. But this argument is circular because retaining (or receiving, or disposing of,) a gun necessarily implies having possession of that same gun.[6]

### III.

Finally, the government and district court's acknowledgement of the perceived unfairness of this enhancement serves as further indication of the need for reversal. Initially, Brooks objected to the four-level enhancement, arguing that possession of the stolen Smith & Wesson could not facilitate the felony of theft by receipt when the gun itself is the crime. The government responded that it was not impermissible double counting because the gun facilitated the offense by being part of it. In spite of this exchange, the government still acknowledged the perceived unfairness of the calculation, stating:

> [T]he guidelines are intended to be interpreted broadly so the proper calculations of the guidelines would include both, the two levels for it being a stolen gun and the four levels for it being possessed in

---

[6] The statute defines "receiving" as "acquiring possession or control or lending on the security of the property." O.C.G.A. § 16-8-7(a).

connection with another felony because it's certainly in connection with that felony. This is where the government has the request for a downward variance of two levels because we appreciate the kind of, I guess, the little bit of a -- the nuances here that make this difficult to understand how the firearm can facilitate possession of the firearm but it's certainly all part and parcel of calculating the guidelines properly. So we're requesting a two-level downward variance to account for what – seeming unfairness."

Doc. 47 at 14–15.[7] The district court overruled Brooks's objection but still chose to follow the government's request, varying Brooks's base offense level down by two. Given the role of district courts as finders of fact, such hesitation should give us pause. The general acknowledgment of perceived unfairness reflects the atypicality of this case.

*Bishop* and *Carillo-Ayala* speak directly to the careful inquiry district courts must engage in when determining whether an enhancement applies. In *Bishop*, we clarified the significance of "in connection with," holding that it "applies only if the court finds that 'the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense.'" 940 F.3d at 1250 (quoting § 2K2.1(b)(6)(B) comment. n.14(A)). *Carillo-Ayala* had previously interpreted "facilitate" as instructing courts to consider the weapon's potential use as a weapon. 713 F.3d at 94. I read both

---

[7] Citations to the record refer to the electronic pagination generated by CM/ECF for the district court.

9　　　　　WILSON, J., Dissenting in Part　　　22-11456

opinions—and all cases discussed—as expressing a desire to avoid using § 2K2.1(b)(6)(B) as a blanket enhancement in cases where firearms are present during the commission of other offenses.

　　For these reasons, I do not believe the four-level enhancement should be upheld here and respectfully dissent.