[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11972

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALPHONSO LATAUREAN JAMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:22-cr-00116-SPC-KCD-1

_____

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Defendant-Appellant Alphonso Lataurean James pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The district court sentenced him to ninety-two months in prison followed by three years of supervised release. James appeals his sentence, arguing that the district court improperly applied a four-level enhancement to his offense level under U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1(b)(6)(B) by relying on the commentary to the Sentencing Guidelines. After careful review, and with the benefit of oral argument, we affirm James's sentence.

## I. BACKGROUND

On August 10, 2022, detectives with the Fort Myers Police Department conducted undercover surveillance at a gas station. They observed a person, later identified as James, wearing a patterned cross-body bag and engaging in apparent hand-to-hand drug transactions. Detectives saw James enter the front passenger seat of a vehicle that then drove away from the gas station.

As they followed, the detectives observed James reaching into the back seat of the car several times. They stopped the vehicle a short distance away and detained James and the driver, "B.B." Upon smelling marijuana, the detectives searched the vehicle. On the driver's side backseat, the detectives recovered the cross-body bag that they had observed James wearing. The bag contained a handgun with an extended magazine and twenty rounds of ammunition. On the driver's side footwell, they found and searched a

plastic shopping bag holding women's clothing and recovered a bluish-purple velvet bag containing .7 grams of cocaine and approximately 15 grams of fentanyl. Detectives also found a small baggie containing Oxycodone pills as well as another small baggie containing cocaine in the front passenger seat door pocket.

James admitted that he had possessed the cross-body bag but denied putting the firearm inside it. DNA testing showed that "James and three other individuals" had "possessed" the gun. James had previously been convicted of a felony and knew at the time that he was a previously convicted felon who had not had his rights restored. As for the drugs, B.B. told detectives that the Oxycodone belonged to her.

A grand jury indicted James with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). James pleaded guilty.

The probation office prepared a presentence investigation report (PSI), which included a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm "in connection with another felony offense." The PSI stated that James "possessed a felony trafficking quantity of fentanyl in close proximity to the firearm," which was "located in the rear of the vehicle, near where James had accessed the bag containing the firearm."

James objected to the PSI's application of the subsection (b)(6)(B) enhancement and again objected before the district court at sentencing. He first argued that the PSI provided "no factual basis to permit a determination that fentanyl was in close proximity

to a firearm" because it failed to establish physical distance and accessibility between the gun and the fentanyl. Second, he argued that the PSI improperly applied the four-level enhancement by deferring to the Guideline's Application Note 14(B), which instructs that the subsection (b)(6)(B) enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs." According to James, Note 14(B) is an unreasonable interpretation of the Guideline's ambiguous phrase "in connection with" so cannot serve as a basis for applying the enhancement.

The government argued that the district court should apply the enhancement because James possessed both the gun and the fentanyl on the day of the incident, and this fit "under any interpretation" of the Guideline. In support, the government called two witnesses: the arresting officer and B.B., the driver of the car. B.B. testified that James got into her car with a purple bag, marijuana, and another bag around his waist and that there was no fentanyl, cocaine, or firearm in her car before James got in. She and James stopped at a gas station, where B.B. went inside. B.B. got back in the car. As she and James drove away, she noticed the police cars and told James she believed they were about to be pulled over. B.B. asked James to hand her the backpack containing her Oxycodone that was lodged between the passenger seat and door. But James told her that he needed to "get right first," and he began reaching around for things below his seat and in the backseat using his left arm while trying to be discreet. B.B. claimed not to know James well and testified that "[i]f I knew he had a gun, if I knew he had fent or any of these things, he would have never got in my car."

There were also inconsistencies in B.B.'s testimony. For example, she initially claimed that the white plastic bag in the back seat contained men's clothing, but body camera footage later showed that it contained women's clothing. The district court credited her testimony to the extent that she saw James take the purple bag out of his pocket and the same bag was later found in her back seat containing fentanyl.

The district court ruled on James's objection to the Guideline enhancement. The court agreed with the parties that the Guideline was ambiguous, so it could "go to the application notes, the commentary notes." The court took a "totality of the circumstances" approach, looking to the factual submissions before the sentencing hearing as well as the testimony. The court credited that the officers observed James wearing a cross-body bag while doing a hand-to-hand transaction and saw him reach into the rear of the vehicle before finding the cross-body bag and containers of contraband in the backseat. Also "important," the court acknowledged, was that the car was "the size of a postage stamp" and "very, very small." From this, the district court concluded that the trafficking amount of fentanyl was "in very close proximity to the firearm" and that "the 'in connection with' element" of the Guideline was met, overruling James's objection to the four-level enhancement.

Ultimately, James's advisory Guidelines sentence was 92 to 115 months, and the district court sentenced James to the low end of the Guidelines, ninety-two months of imprisonment. James timely appealed his sentence.

## II. STANDARD OF REVIEW

We review a district court's interpretation and application of the Sentencing Guidelines de novo. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc). We review the district court's findings of fact for clear error, including its "determination that a defendant possessed a gun 'in connection with' another felony offense." *United States v. Martinez*, 964 F.3d 1329, 1333 (11th Cir. 2020) (quotation marks omitted). This court "may affirm a sentencing enhancement for any reason supported by the record, even if not relied upon by the district court." *United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015) (internal quotation marks omitted).

## III. DISCUSSION

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines provides for a four-level sentencing enhancement when a defendant "used or possessed any firearm or ammunition in connection with another felony offense." The Sentencing Commission's commentary to this Guideline provides additional instruction: subsection (b)(6)(B) applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(B). In these cases, the commentary explains, the application of subsection (b)(6)(B) "is warranted because the presence of the firearm has the potential of facilitating another felony offense." *Id.*

James argues that we should reverse his sentence because the district court erred when it deferred to the commentary's Application Note 14(B) to apply the subsection (b)(6)(B)

23-11972                Opinion of the Court                7

enhancement. He agrees with the government that subsection (b)(6)(B)'s "in connection with" language is ambiguous, but he maintains that Note 14(B) is not a reasonable interpretation of the Guideline.

To discern whether such deference to the commentary was appropriate, we begin with a brief overview of when and how much we defer to the Sentencing Commission's Commentary to the Guidelines and then turn to whether the district court properly relied on Application Note 14(B).

A.

The Supreme Court first declared in *Bowles v. Seminole Rock & Sand Co.* that when "the meaning of [a regulation] is in doubt," the agency's interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." 325 U.S. 410, 414 (1945). The Court reaffirmed *Seminole Rock* in *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Courts today typically refer to the deference afforded to agency interpretations of their own regulations as *Auer* or *Seminole Rock* deference. *See, e.g.*, *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1179 (11th Cir. 2021).

The Supreme Court later clarified the circumstances making *Auer* deference appropriate. In *Kisor v. Wilkie*, the Court explained that a court may defer to an agency's interpretation of its own regulation only when (1) the regulation is "genuinely ambiguous" after exhausting "all the 'traditional tools' of construction"; (2) the agency's interpretation is reasonable, meaning it falls "within the zone of ambiguity the court has identified"; and (3) after the court

makes "an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight." 588 U.S. 558, 574–76 (2019).

At step one, "a court must carefully consider the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* at 575 (internal quotation marks omitted and alteration adopted). Despite our best interpretive efforts, a regulation may be genuinely ambiguous if the rule does "not directly or clearly address every issue," "prove[s] susceptible to more than one reasonable reading," fails to capture "specialized and varying" subject matter "in its every detail," or leaves "no single right answer" to the "interpretive question." *Id.* at 566, 575. "Whichever the case," only if we are left with "real uncertainties about a regulation's meaning," do we proceed to *Kisor*'s step two. *See id.* at 566, 575.

We follow the *Kisor* framework to determine whether we may defer to Sentencing Commission's commentary when interpreting and applying the Sentencing Guidelines. *Dupree*, 57 F.4th at 1275.[1]

---

[1] The Supreme Court recently ruled that, where Congress has not granted discretionary authority to an agency to interpret a federal statute, "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024). Although perhaps *Loper Bright* has the potential to cast doubt on *Kisor* and *Dupree*'s reasoning in future cases, it dealt with agency interpretations of ambiguous statutes, not agency interpretations of their own regulations or the Sentencing Commission's commentary to the Guidelines.

23-11972                 Opinion of the Court                 9

## B.

This case marks our first opportunity to consider the sentencing enhancement in section 2K2.1(b)(6)(B) under the *Kisor* and *Dupree* framework. And, as far as we can tell, we are only the second circuit to weigh in. *See United States v. Perez*, 5 F.4th 390, 394–99 (3d Cir. 2021).

We start with the Guideline's text. U.S.S.G. § 2K2.1(b)(6)(B) provides a four-level sentencing enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." The Guidelines do not further define the phrase "in connection with." But in looking to its common meaning, a "connection" means an "association; relationship; . . . contextual relation," or a "causal or logical relation or sequence." *Connection, Random House Dictionary of the English Language* (2d ed. 1987); *Connection, Webster's Ninth New Collegiate Dictionary* (1988); *accord Connexion, Oxford English Dictionary* (2d ed. 1989) (defining as "a bond of interdependence, causality, logical sequence, coherence, or the like"); *see also Perez*, 5 F.4th at 403 (Bibas, J., concurring in the judgment) (defining as a "causal or logical relation or sequence"). To paraphrase, a person possesses a firearm "in connection with" another offense if the firearm possession is contextually, causally, or logically related to that offense.

---

Thus, it is not squarely on point and has no bearing on the legal framework we rely on here.

This understanding of the phrase is quite broad. But our precedent confirms that the phrase "in connection with" in section 2K2.1(b)(6)(B) must be interpreted broadly. *United States v. Brooks*, 112 F.4th 937, 949 (11th Cir. 2024); *see also id.* at 956 (Wilson, J., concurring in part and dissenting in part); *United States v. Smith*, 480 F.3d 1277, 1280 (11th Cir. 2007) ("[T]he term 'in connection with' in U.S.S.G. § 2K2.1(b)(5) [now, § 2K2.1(b)(6)(B)] should be given its ordinary and natural meaning, and we have expressly rejected a more restrictive interpretation."); *cf. United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) ("[W]e gave the phrase 'in connection with,' contained within USSG § 2B5.1(b)(3), an expansive interpretation." (footnote omitted)).

Despite its breadth, the touchstone of each of our cases interpreting what it means to use or possess a firearm "in connection with" another offense has always been the firearm's potential to facilitate the other offense. *See, e.g.*, *United States v. Carillo-Ayala*, 713 F.3d 82, 93–96 (11th Cir. 2013). This reading derives from the Supreme Court's interpretation of the "materially similar" phrase "in relation to." *Brooks*, 112 F.4th at 953 (Grant, J., concurring). In *Smith v. United States*, the Supreme Court explained that the phrase "'in relation to' is expansive" yet still establishes "boundaries." 508 U.S. 223, 237 (1993). At minimum, "the firearm must have some purpose or effect with respect to the . . . crime," and it "must facilitate, or have the potential of facilitating" the offense. *Id.* at 238 (internal quotation marks omitted and alterations adopted). The gun's "presence or involvement cannot be the result of accident or coincidence." *Id.* at 238. Building on *Smith*, we later observed that a

"connection exists where . . . the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred." *Carillo-Ayala*, 713 F.3d at 93 (internal quotation marks omitted).

This expansive reading has led to somewhat unexpected applications. On the one hand, a defendant clearly uses or possesses a firearm "in connection with" another offense when he or she threatens someone with the gun or uses it for self-protection during the offense—the gun helps to facilitate the crime. *See Smith*, 508 U.S. at 238 (describing the "ordinary case" where the gun serves as a "means of protection or intimidation"); *Perez*, 5 F.4th at 406 (Bibas, J., concurring in the judgment) (explaining that it is often "obvious" when a gun is connected to nearby drugs, such "as when a drug dealer carries it in his holster or keeps an arsenal right next to his stash").

On the other hand, one would not immediately expect that exchanging a gun for drugs counts as the "use of a firearm . . . in relation to a drug trafficking crime," but that was the *Smith* Court's conclusion. 508 U.S. at 225 (internal quotation marks omitted and alterations adopted). And it is less obvious that a defendant possesses a firearm in connection with another felony offense even if he stole the firearm during a burglary, making it the "fruit and not an instrument of the crime." *Carillo-Ayala*, 713 F.3d at 94 (citing *United States v. Young*, 115 F.3d 834, 838 (11th Cir. 1997) (per

curiam)); *see also Brooks*, 112 F.4th at 950 (explaining that the defendant possessed a stolen firearm "in connection with" the other felony offense of receipt of stolen property because it was the fruit of the crime and he could have used the firearm to facilitate the commission of the theft).

But the fact that a statute or sentencing guideline "can be applied in situations not expressly anticipated . . . does not demonstrate ambiguity. It demonstrates breadth." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (internal quotation marks omitted); *United States v. Monsanto*, 491 U.S. 600, 609 (1989) ("The statutory provision at issue here is broad and unambiguous . . . ."); *see also Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1240 (11th Cir. 2000) (per curiam) ("[A] statute is not vague or ambiguous just because it is broad."). And it makes sense that the language is broad—to be effective, the Guideline must account for "the myriad factual contexts in which the phrase might come into play." *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996). These cases, and others like them, reinforce the idea that the meaning of "in connection with" is broad, not that it is ambiguous.

The Third Circuit would disagree. It observed that "the phrase 'in connection with' is notable for its vagueness and pliability" and that "no simple judicial formula can adequately capture the precise contours of the 'in connection with' requirement." *Perez*, 5 F.4th at 396 (internal quotation marks omitted). But this understanding conflicts with the Supreme Court's interpretation of the analogous phrase "in relation to." While the Court recognized

that phrase is "expansive," it nevertheless recognized that it has "boundaries." *Smith*, 508 U.S. at 237. So too here. There must be an articulable connection between the firearm and the other offense, and the firearm's "presence or involvement cannot be the result of accident or coincidence." *Id.* at 238. So, the phrase "in connection with" does not suffer from the kind of unworkable vagueness that the Third Circuit suggests.

Nor are we persuaded by the Third Circuit's invocation of the Guideline's history to find ambiguity. It first credited a circuit split as to whether the phrase "encompassed those cases where the firearm's presence was merely accidental or coincidental." *Perez*, 5 F.4th at 396 (citing *Young*, 115 F.3d at 838). It then pointed to the Sentencing Commission's subsequent addition of Application Note 14 defining the phrase "in connection with" to address the circuits' disagreement. *Id.* (citing U.S.S.G. app. C, amend. 691). But finding ambiguity here ignores another key piece of the history.

The commentary the Sentencing Commission added in Note 14 tracks the language of *Smith*. *Compare* U.S.S.G. app. C, amend. 691 (explaining the Guideline applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense" and "is warranted because the presence of the firearm has the potential of facilitating another felony offense"), *with Smith*, 508 U.S. at 238 ("[T]he gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense." (internal quotation marks omitted and alteration adopted)). And, as we have explained, all *Smith* did was define the analogous term "in relation to"

according to its plain meaning. *See Smith*, 508 U.S. at 237–38. If anything, the Guideline's history confirms that the plain reading of the Guideline's text has been correct all along.

Finding the Third Circuit's analysis at *Kisor*'s step one wanting, we decline to adopt its reasoning. Instead, we conclude that U.S.S.G. § 2K2.1(b)(6)(B) is unambiguous with respect to the instant case, based on the plain meaning of "in connection with" and precedent, and we end our inquiry under *Kisor* here. *See* 588 U.S. at 575. We have no need to consider, let alone defer to, the Application Notes to subsection (b)(6)(B).

## C.

We turn finally to James's case. At sentencing, the district court expressly concluded that the Guideline was ambiguous and proceeded to consider the Guideline commentary. The court took a "totality of the circumstances approach" but, relying on Application Note 14(B)'s emphasis on physical proximity, specifically noted that the bag containing the gun was found in the rear seat of a "very, very small" vehicle, "the size of a postage stamp."

At the same time, the district court considered the gun's logical relationship to the offense. Officers observed James engage in what looked like a hand-to-hand drug sale while he was wearing the cross-body bag later found to contain the firearm and twenty rounds of ammunition. Carrying a gun on one's person during a drug sale has the potential to facilitate the trafficking of the drugs. Thus, the district court did not clearly err in its determination that James possessed the gun in connection with another felony offense.

We affirm the application of the four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

## IV. CONCLUSION

The phrase "in connection with" in section 2K2.1(b)(6)(B) of the Sentencing Guidelines is unambiguous. The district court erred by giving deferential weight to the Guideline's commentary notes. Still, the district court's findings of fact at sentencing were sufficient to conclude that James possessed a firearm "in connection with" drug trafficking. Therefore, we affirm James's sentence.

**AFFIRMED.**