**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-11552
Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ARTHUR GENE YOUNG,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:23-cr-00010-TCB-RGV-1

————————————

Before JILL PRYOR, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

Arthur Young appeals his 168-month sentence for his conviction of a single count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

After review,[1] we affirm Young's sentence.

## I.  DISCUSSION

Young raises five arguments on appeal regarding his sentence.  He argues that (1) the district court erred by imposing a two-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(1) for possession of three or more firearms; (2) the district court erred by imposing a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense; (3) the district court erred by imposing a two-level sentencing enhancement under U.S.S.G. § 3C1.1 for obstruction of justice based on false statements made to a probation officer during a presentence interview; (4) the district court erred by imposing a two-level sentencing enhancement under U.S.S.G. § 3C1.2 for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers; and (5) the district court abused its discretion by imposing a substantively unreasonable sentence.

We address each argument in turn.

---

[1] "We review a district court's interpretation of the Sentencing Guidelines and application of the Guidelines to the facts *de novo*, and we review the district court's findings of fact for clear error."  *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).  "We review the substantive reasonableness of a sentence for an abuse of discretion."  *United States v. Osorio-Moreno*, 814 F.3d 1282, 1287 (11th Cir. 2016).

### A. Possession of Three Firearms

Under § 2K2.1(b)(1), a district court must enhance a defendant's offense level by two points if "the offense involved" between three and seven firearms.  U.S.S.G. § 2K2.1(b)(1)(A).

The district court imposed the § 2K2.1(b)(1) enhancement based on (1) the firearm that Young possessed at the time of his arrest for the underlying offense in May 2023, (2) a second firearm that Young unlawfully possessed in February 2021, and (3) a third firearm that Young unlawfully possessed in March 2021.  Young asserts that the district court erred in imposing the § 2K2.1(b)(1) enhancement because (1) the government failed to present evidence at sentencing establishing that he possessed a firearm in February 2021, and (2) the February and March 2021 possessions were not relevant conduct for the underlying offense.  Young is incorrect on both counts.

First, the district court did not err in its conclusion that Young possessed a firearm in February 2021.  The district court's conclusion that Young possessed a firearm in February 2021 was based on a video of a recorded interview between Young and a police investigator from March 2021.  In that interview, Young admitted to possessing a firearm during a February 2021 incident in which Young purportedly threw the firearm at another individual, although Young denied throwing the firearm.  That video was admitted into evidence during a pretrial hearing via a motion *in limine* and then presented at trial.

The district court was permitted to rely on the interview video to make its factfinding relating to the February 2021 possession because a district court may rely at sentencing on evidence presented during trial. *See United States v. White*, 663 F.3d 1207, 1216 (11th Cir. 2011) ("The district court may base its findings of fact at sentencing on *evidence presented at trial*, undisputed statements in the PSR, and evidence presented at the sentence hearing." (emphasis added)); *see also United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990) ("[A] sentencing court's reliance on [evidence presented at the defendant's trial] is entirely proper."). It does not matter that the video was presented at trial for a different purpose than to prove the February 2021 possession or that Young pled guilty at the close of the government's case. Young had the opportunity to contest the video at the sentencing hearing by arguing that the video did not support that he possessed a firearm in February 2021 and by presenting any potential evidence to the contrary.

Given that the district court could rely on the interview video at sentencing and that Young admitted in the video that he possessed a firearm in February 2021, the district court did not clearly err in concluding that Young possessed a firearm in February 2021 to support the § 2K2.1(b)(1) enhancement.[2] *See United*

---

[2] Young also argues that the district court erred by failing to make an explicit factfinding relating to the February 2021 possession. We disagree. However, even if the district court's factfinding relating to that possession was insuffi-

25-11552                Opinion of the Court                5

*States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006) ("For sentencing purposes, possession of a firearm involves a factual finding, which we review for clear error.").

Second, the district court did not clearly err by concluding that the February and March 2021 firearm possessions constituted relevant conduct that could support the § 2K2.1(b)(1) enhancement under U.S.S.G. § 1B1.3. *See United States v. Gyetvay*, 149 F.4th 1213, 1239 (11th Cir. 2025) ("Whether an act qualifies as relevant conduct under U.S.S.G. § 1B1.3 is a question of fact reviewed for clear error.").

Under § 1B1.3, in calculating a defendant's guideline range, district courts can consider as relevant conduct acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). In considering whether previous offenses are part of "the same course of conduct" as the offense of conviction for purposes of § 1B1.3, this Court considers three factors: "(1) 'the degree of similarity of the offenses,' (2) 'the regularity (repetitions) of the offenses,' and (3) 'the time interval between the offenses.'" *United States v. Brooks*, 112 F.4th 937, 946 (11th Cir. 2024) (quoting U.S.S.G. § 1B1.3 cmt. n.5(B)(ii)).

As to the first factor, this Court has explained that multiple instances of possessing separate firearms as a convicted felon are

---

ciently explicit, remand would be unwarranted because the district court's decision was based on clearly identifiable record evidence, *i.e.*, the interview video. *See United States v. Gyetvay*, 149 F.4th 1213, 1239 (11th Cir. 2025).

"identical." *Id.* Thus, Young's multiple possessions of separate firearms as a convicted felon are highly similar to each other.

As to the second factor, this Court has explained that possessing separate firearms as a convicted felon on only two occasions does not establish a high degree of regularity. *Id.* However, Young's possession of different firearms as a convicted felon on three separate occasions does exhibit at least some regularity of such conduct.

As to the third factor, at first glance there does not appear to be significant contemporaneity between Young's different firearm possessions. The February and March 2021 possessions occurred approximately two years prior to the May 2023 possession. This gap in time on its face suggests that the prior possessions could not be considered part of the same course of conduct as the latter possession. *See United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994) (holding that two acts that occurred over a year apart were "temporally remote" from each other for purposes of § 1B1.3). However, as the government noted at sentencing, Young was only out of prison for approximately thirty-eight days of the two-year period between the relevant possessions.[3]

---

[3] Young does not challenge on appeal the district court's conclusion that he was out of prison for only thirty-eight days during the relevant two-year period, which was based on allegations in the presentence investigation report to which he did not object. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("[A] failure to object to allegations in a PSI admits the facts for sentencing purposes.").

Taking that into consideration, the period of time during which Young could actually possess a firearm in the relevant two-year period was comparable in length to the periods in cases where this Court determined that there was close temporal proximity between different firearm possessions. *See Brooks*, 112 F.4th at 946-47 (upholding a relevant-conduct finding where there was a gap of three months between different firearm possessions, and noting that other courts of appeals had upheld similar findings with gaps of up to nine months between different firearm possessions); *see also United States v. Ruiz*, 178 F.3d 877, 882 (7th Cir. 1999) ("[A]n involuntary cessation of activity for a period of time may not connote abandonment of the course of conduct, but instead may indicate that despite the participants' efforts the scheme was put on hold temporarily. Thus, where the gap in time is explainable by non-volitional factors, such as by incarceration of the defendant in the interim . . . , it may not preclude a finding of a single course of conduct for sentencing purposes." (citation omitted)).

In light of these factors, the district court did not clearly err by concluding that Young's February and March 2021 firearm possessions were part of the same course of conduct as his May 2023 possession and thus constituted relevant conduct under § 1B1.3(a)(2) that could be used to impose the § 2K2.1(b)(1) enhancement.

*B. Possession of a Firearm in Connection with Another Felony*

Under § 2K2.1(b)(6), a district court must enhance a defend-

ant's offense level by four points if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (2024).[4]

The district court imposed the § 2K2.1(b)(6) enhancement based on the conclusion that Young committed the Georgia felony offense of willful obstruction of law enforcement officers during his arrest for the underlying offense in May 2023. The Georgia offense prohibits "knowingly and willfully resist[ing], obstruct[ing], or oppos[ing] any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer." O.C.G.A. § 16-10-24(b).

Young argues that the district court erred by imposing the § 2K2.1(b)(6) enhancement because the government failed to prove that (1) he committed Georgia felony obstruction, or (2) he possessed the relevant firearm "in connection with" that felony offense. Young has failed to establish error on either ground.

First, the district court did not clearly err by concluding that the government proved by a preponderance of the evidence that Young's actions during the May 2023 arrest qualified as Georgia felony obstruction. *See Brooks*, 112 F.4th at 947 ("For purposes of the sentencing determination, the district court could make any finding of fact that was supported by a preponderance of the evidence." (quotation marks omitted)).

---

[4] In the most recent edition of the Sentencing Guidelines, this provision was moved to § 2K2.1(b)(7)(B). *See* U.S.S.G. § 2K2.1(b)(7)(B) (2025).

At trial, the government submitted bodycam footage of the officers who arrested Young for the underlying offense in May 2023. That footage showed that Young refused to comply with multiple officers' repeated commands to get on the ground and stop moving, and walked slowly away from the officers for several minutes into a busy road and then onto active train tracks. Then, when one officer approached Young on the train tracks and placed his hand on Young's shoulder, Young tried to shove the officer away and grabbed the officer's wrist. In the ensuing struggle, Young and the officer both fell down the raised embankment where the train tracks were located. While on the ground, Young did not immediately give up his hands to be handcuffed and continued to struggle, so a different officer tased Young. Only after a brief additional struggle with a few more officers was Young handcuffed and detained.

The district court could rely on this bodycam footage at sentencing, and the district court did not clearly err by concluding based on the footage that Young had committed Georgia felony obstruction. The elements for Georgia felony obstruction are that the defendant (1) "wilfully resist[ed] an officer" during a lawful arrest, and (2) "offered or did violence to the person of the officer." *Smith v. State*, 669 S.E.2d 530, 531 (Ga. Ct. App. 2008).

Young only challenges the second element. Under Georgia law, "violently struggling with officers" during a lawful arrest satisfies the second element, even if the defendant did not actually strike or threaten any officer. *Id.* at 531-32. Georgia courts have

affirmed convictions for felony obstruction under facts similar to those in this case. *See, e.g.*, *Cole v. State*, 614 S.E.2d 883, 883-85 (Ga. Ct. App. 2005) (affirming felony-obstruction conviction where the defendant "resisted and shoved" officers and then "struggled and wrestled" with officers during arrest); *Harris v. State*, 622 S.E.2d 905, 907-08 (Ga. Ct. App. 2005) (affirming felony-obstruction conviction where the defendant "struck and pushed" an officer during arrest).

Based on these principles, the district court did not clearly err by concluding that Young violently struggled with the officers when he (1) pushed at and grabbed an officer, (2) struggled with the officer such that they both fell down an embankment, and (3) continued to struggle and refused to give up his hands to be handcuffed until he was tased.

Second, the district court did not clearly err by concluding that Young possessed a firearm in connection with the felony-obstruction offense. *See United States v. James*, 135 F.4th 1329, 1332 (11th Cir. 2025) (explaining that this Court reviews for clear error a determination that a defendant possessed a firearm in connection with another felony offense).

"[A] person possesses a firearm 'in connection with' another offense if the firearm possession is contextually, causally, or logically related to that offense." *Id.* at 1334. Reading the phrase "in connection with" expansively, this Court has held that a defendant is subject to a § 2K2.1(b)(6)(B) enhancement if his unlawful possession of a firearm during the commission of another offense "facilitates, or has the potential of facilitating, the other offense." *Brooks*,

25-11552             Opinion of the Court                11

112 F.4th at 950. Under certain circumstances, "mere possession of a firearm can be enough to apply a sentencing enhancement," for example if the firearm "potentially emboldens" the other offense. *Id.* at 949 (citation modified) (quoting *United States v. Jackson*, 276 F.3d 1231, 1234-35 (11th Cir. 2001)). On the other hand, a gun's presence does not satisfy § 2K2.1(b)(6)(B) if it is "the result of accident or coincidence." *James*, 135 F.4th at 1335 (quotation marks omitted).

The district court did not clearly err by concluding that Young's possession of the loaded firearm during the May 2023 arrest had the potential to facilitate his obstruction offense because Young knowingly possessed the loaded firearm while he violently resisted arrest. Significantly, Young could have used the loaded firearm to aid his resistance, and his possession of the firearm potentially emboldened his actions. It is true that Young did not actually use the firearm or even reach for it during the arrest—aside from briefly patting the pocket where he stored the firearm—but he did not actually need to use it to qualify for the enhancement. *See Brooks*, 112 F.4th at 949-52.

## C. False Statements During Presentence Interview

Under § 3C1.1, a district court must enhance a defendant's offense level by two points if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. A

§ 3C1.1 enhancement is warranted if a defendant provides "materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1 cmt. n.4(H); *see also United States v. Dedeker*, 961 F.2d 164, 166 (11th Cir. 1992).

The district court imposed the § 3C1.1 enhancement based on its finding that Young lied to a probation officer during a presentence interview. Specifically, Young told the probation officer that his mother was a drug addict, introduced him to drugs when he was two or three years old, and drove him to Atlanta to purchase drugs while impaired.

Young does not contest that his statements to the probation officer were false. However, he argues that (1) he did not make the false statements willfully, and (2) the statements were not material. Both of Young's arguments on this issue fail.

First, the district court did not clearly err by concluding that Young made the false statements to the probation officer willfully. *See United States v. Beaufils*, 160 F.4th 1147, 1162 (11th Cir. 2025) ("When reviewing a district court's application of an obstruction of justice sentencing enhancement, we review the district court's factual findings for clear error, but review *de novo* its application of the Sentencing Guidelines to those facts.").

Willfulness in the context of § 3C1.1 means that the defendant "must consciously act with the purpose of obstructing justice." *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (quotation marks omitted). Young argues that he did not make the relevant

false statements willfully because he genuinely believed that the statements were true as a result of delusions stemming from mental illness. In support, he cites to a report written by a psychiatric expert concerning his delusions that he submitted to the district court for sentencing.

As the government explained at sentencing, Young did not disavow the false statements until after the government discovered that they were false, and Young was represented by counsel during the presentence interview. Given these facts, the conclusion that Young intentionally lied about his upbringing is at the very least plausible, and thus the district court did not clearly err. *See Gyetvay*, 149 F.4th at 1242 ("We will not find clear error unless we are left with the definite and firm conviction that a mistake has been made."); *see also Beaufils*, 160 F.4th at 1162 ("[W]e give significant deference to the district court's credibility assessments.").

Second, the district court did not clearly err by concluding that Young's false statements were material.

A false statement is material for purposes of § 3C1.1 if it conveys "information that, *if believed*, would tend to influence or affect the issue under determination." *United States v. Doe*, 661 F.3d 550, 566 (11th Cir. 2011) (quoting U.S.S.G. § 3C1.1 cmt. n.6). The false information does not actually need to hinder or affect the relevant determination, and the threshold for materiality is "conspicuously low." *Id.*

The district court's conclusion that Young's false statements about his purportedly traumatic childhood were material was not

clearly erroneous because, if the district court had believed the statements, they "could have affected the determination of his sentence." *See United States v. Odedina*, 980 F.2d 705, 705 (11th Cir. 1993). A defendant's "history and characteristics" is one of the sentencing factors that a district court must weigh in deciding what sentence to impose. 18 U.S.C. § 3553(a)(1). In fact, the district court in this case decided to impose a sentence below the statutory maximum because of Young's mental-health problems despite its serious concerns about the threat Young posed to society. Therefore, it is possible that if the district court believed Young's false statements about his childhood, it could have been induced to impose an even shorter sentence.

## D. Reckless Endangerment During Flight

Under § 3C1.2, a district court must enhance a defendant's offense level by two points "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2.

"'Reckless' refers to 'a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.'" *United States v. Matchett*, 802 F.3d 1185, 1197 (11th Cir. 2015) (quoting *United States v. Wilson*, 392 F.3d 1243, 1247 (11th Cir. 2004)). Flight alone is insufficient to warrant a § 3C1.2 enhancement; instead, "[t]he flight must be accompanied

by a 'substantial risk of death or serious bodily injury to others,' and the defendant must 'recklessly create' that risk." *Id.* (quoting *Wilson*, 392 F.3d at 1247). "It is the defendant's conduct, not that of the pursuing officers, which must recklessly create the substantial risk of death or serious bodily injury to others." *Wilson*, 392 F.3d at 1247.

The district court did not clearly err by imposing the § 3C1.2 enhancement based on Young's flight from law enforcement officers during the May 2023 arrest.

The bodycam footage of the May 2023 arrest that was admitted at trial showed that Young fled from multiple police officers at walking speed while they were trying to detain him. Young led the officers into a busy road and then onto active railroad tracks. Additionally, Young kept a loaded firearm in his pocket and physically struggled with the officers while they were trying to lawfully arrest him, causing him and one officer to fall down an embankment.

It was not clear error for the district court to conclude that Young recklessly created a substantial risk of death or seriously body injury for the officers by leading them into a dangerous environment and physically struggling with them while possessing a loaded firearm. *See Matchett*, 802 F.3d at 1197-98 (affirming a § 3C1.2 enhancement where the defendant wrestled with an officer with a loaded firearm in his pocket because the firearm could have accidentally discharged). Although none of the officers were injured during the arrest, based on these facts, it was justifiable for

the district court to conclude that "there was a substantial risk that something could have gone wrong and someone could have died or been seriously injured." *Id.* at 1198.

E. *Substantive Reasonableness*

Lastly, Young argues that his 168-month within-guideline sentence is substantively unreasonable because the district court overemphasized a single factor—the danger Young posed to society—to the exclusion of the other sentencing factors.

The district court did not abuse its discretion by sentencing Young to 168 months' imprisonment. The primary basis for the district court's sentence was the threat it viewed that Young posed to society. However, the district court also explicitly considered the need for Young to obtain treatment for his mental-health problems and declined to impose the statutory maximum sentence because of those problems.

The district court's decision to give great weight to the danger Young posed to society was appropriate because a district court "is permitted to attach 'great weight' to one [sentencing] factor over others." *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)); *see also United States v. Rodriguez*, 34 F.4th 961, 977 (11th Cir. 2022) ("[T]he weight given to any of the § 3553(a) factors is committed to the sound discretion of the district court."). Although the district court did not explicitly discuss each of the relevant sentencing factors, it was not required to do so as long as it considered all of them. *See United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).

In light of the great deference that we must afford to a district court's weighing of the 18 U.S.C. § 3553(a) factors, we conclude that Young's sentence is substantively reasonable. *See United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc) ("A district court's sentence need not be the most appropriate one, it need only be a reasonable one. We may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable."); *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) ("In reviewing the reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was in the ballpark of permissible outcomes." (quotation marks omitted)); *see also United States v. Sotelo*, 130 F.4th 1229, 1245 (11th Cir. 2025) ("While we do not formally presume that a within-guidelines-range sentence is reasonable, we ordinarily expect it to be." (quotation marks omitted)).

## II. CONCLUSION

The district court did not err in its calculation of Young's guideline range. Additionally, Young's within-guideline sentence is substantively reasonable. Accordingly, we affirm Young's sentence of 168 months' imprisonment.

**AFFIRMED.**