**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13953

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOJUAN LINDSEY,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00071-KKM-SPF-1

————————————

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Jojuan Lindsey appeals his conviction and sentence for possession of a firearm by a convicted felon. He argues that the district court erred in denying his motion to suppress because officers

lacked probable cause to search the rental car that he was driving. He also argues that the court erred in applying a four-level sentencing enhancement because it relied on the commentary to the Sentencing Guidelines to do so. After a review of the parties' arguments and the record, we affirm.

## I

### A

A grand jury indicted Mr. Lindsey for possession of a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Mr. Lindsey moved to suppress the firearm and "any evidence obtained" through a warrantless search of the rental car he was driving. The district court denied his motion to suppress after reviewing footage recorded by the police officers who effectuated the stop. In its order denying Mr. Lindsey's motion to suppress, the court made several factual findings, including the following.

On December 27, 2022, at 11:45 p.m., Mr. Lindsey was driving a 2017 Black Hyundai Elantra. *See United States v. Lindsey*, 691 F. Supp. 3d 1370, 1373 (M.D. Fla. 2023). Two police officers, Quentin-Lee Morgan and Ryan Marcoux, observed Mr. Lindsey fail to come to a complete stop at a stop sign in violation of Florida law. *See id.* The left taillight on the car also appeared inoperative in violation of Florida law. *See id.* at 1373–74. Officers Morgan and Marcoux activated their emergency lights and sirens to effectuate a traffic stop, but Mr. Lindsey did not promptly pull over. *See id.* at 1374. Instead, he "continued at least a block-and-a-half on the same

street and turned left onto a different street after the officers initiated the stop." *Id.* He "eventually slowed his car to a pace that caused the officers to believe that [he] might jump out and run." *Id.* (citing Officer Morgan's recorded comment to "dispatch over the radio, 'It looks like he is getting ready to flee or is looking for a place to bail.'"). The officers "also noticed that [Mr.] Lindsey was making furtive movements while they followed him, as if attempting to hide objects in the car." *Id.*

Mr. Lindsey "ultimately stopped his car on a strip of grass between the road and a sidewalk in front of a home (which the officers later learned was his grandmother's)." *Id.* Officer Marcoux approached the driver's side of the vehicle. Mr. Lindsey "did not roll down his window even though Officer Marcoux knocked on the window repeatedly." *Id.* Mr. Lindsey initially turned off the engine, but "almost immediately restarted the vehicle as the officers approached." *Id.* He "then put the vehicle in park and turned the car off again." *Id.* Officer Marcoux "attempted to open [Mr.] Lindsey's door, but the car door was locked." *Id.* "At Officer Morgan's direction, Officer Marcoux then ordered [Mr.] Lindsey to exit the vehicle." *Id.*

The officers "attempted to restrain [Mr.] Lindsey once he exited the car" and "[a]lthough [Mr.] Lindsey initially resisted . . . , the officers forced [him] to the ground and secured him in handcuffs." *Id.* The officers then searched Mr. Lindsey's person. They did not find contraband. *See id.* After placing Mr. Lindsey in the back of a

police cruiser, the officers "then began searching [Mr.] Lindsey's vehicle and found a firearm, cocaine, and cash." *Id.*

Mr. Lindsey was driving a rental car; the person who rented it had given him "permission to drive it." *Id.* Mr. Lindsey told the police officers that the car was not his and that "[n]one of that sh** in the car is mine. All I got is some money in that car. That's all I got." *Id.* (quoting law enforcement body camera recordings).

After making its factual findings, the district court denied Mr. Lindsey's motion to suppress. The court first concluded that Mr. Lindsey had Fourth Amendment standing because he had a reasonable expectation of privacy in the rental vehicle that was searched. *See id.* at 1375–76. The court next concluded that Mr. Lindsey did not abandon his reasonable expectation of privacy in the rental vehicle, despite his statements that he did not own the car. *See id.* at 1376–79.

Having established Mr. Lindsey's standing, the district court then concluded that the traffic stop was reasonable because "police had two bases to initiate the traffic stop" under Florida law—namely, that Mr. Lindsey failed to halt at a stop sign and was driving a car with a broken left taillight. *See id.* at 1379–80. As to Mr. Lindsey's failure to stop at the stop sign, the court stated that although the vehicle was "difficult to see on the dashcam," "what can be observed does not show that [Mr.] Lindsey came to a complete stop—if anything, it appears as though he did not come to a complete stop." *Id.* at 1380. The court also noted that the "dashcam

video does not rebut [the officers'] testimony." *Id.* The court reasoned that Mr. Lindsey's argument at the suppression hearing "that it is *possible* he came to a complete stop well ahead of the intersection but out of the officers' vision does not negate the objectively reasonable basis for the stop." *Id.*

The district court also concluded that the warrantless search of the vehicle was lawful under the automobile exception to the Fourth Amendment. Mr. Lindsey did not "dispute that the vehicle was operational," and so the court focused on whether "the police had probable cause to search [his] vehicle." *Id.* at 1381. The court reasoned that, "[c]rediting the testimony of Officer Morgan and Officer Marcoux (much of which was confirmed by the corroborating evidence), there were multiple observations that [gave] rise to a fair probability that contraband or evidence of a crime was inside [Mr.] Lindsey's vehicle." *Id.*

First, "when the officers initiated their traffic stop, [Mr.] Lindsey did not pull over immediately" and instead "drove a block-and-a-half, turned left, and drove another block before stopping." *Id.*

Second, the officers "observed [Mr.] Lindsey making furtive movements while they were driving behind him," and it "looked like [he] was hiding objects" in the vehicle. *See id.* Although Mr. Lindsey argued that the "officers' testimony is inconsistent with the dash camera footage because it [was] too dark on the video to see what was happening inside of [the] car," the court "[found] [the officers'] testimony credible." *Id.* "Importantly," the court reasoned,

"it is not *inconsistent* for a dash camera recording events at night from a singular vantage point to capture less than one might see if in person.  And [Mr.] Lindsey put forth no other contrary evidence, whether testimonial or documentary." *Id.*

Third, the court found that, "as [Mr.] Lindsey failed to pull over, he took a left turn and slowed his car," "then accelerated," and next "continued over a speed bump before proceeding down the road. *See id.* at 1381.  "Officer Morgan contemporaneously noted over the radio that it looked like [Mr.] Lindsey was looking for a place to flee." *Id.*

Fourth, "when the officers approached [Mr.] Lindsey's vehicle, [he] acted oddly.  [Mr.] Lindsey turned off his car while it was still in drive" and then, "after the officers arrived at either side of the vehicle, [Mr.] Lindsey restarted the car, shifted the car back in park, and turned the car off again." *Id.* at 1382.  He "refused to roll down the window and speak to Officer Marcoux despite repeated knocking on his window." *Id.*  Mr. Lindsey "opened his door slightly but closed it again quickly" and, "[w]hen Officer Marcoux attempted to open the door himself, it was locked." *Id.*  The court concluded that "[a] reasonable officer would interpret [Mr.] Lindsey's reticence to comply with the officers' demands and [Mr.] Lindsey's unusual behavior during the traffic stop as probative of contraband or other evidence of a crime in the vehicle." *Id.*  And although Mr. Lindsey argued that the car "had an issue with the lock on the driver's side door," that possible "innocent explanation

. . . does not undermine the officers' probable cause." *Id.* Furthermore, although Mr. Lindsey argued that he "did not initially comply with the officers' demands because he turned his car off while it was still in drive, and he needed to restart the vehicle to put it in park," "Officer Marcoux said that Officer Morgan did not orally recite what [Mr.] Lindsey was doing while they were asking [him] to exit the car." *Id.*

Fifth, Mr. Lindsey "spontaneously disclaimed ownership of the rental car at the first suggestion that the officers would search the vehicle," which the district court said "provide[d] yet another basis for the officers' assessment that a fair probability of contraband or evidence of criminality would be found in the vehicle." *Id.* at 1383.

"Overall," the district court concluded that the search of the vehicle was lawful under the automobile exception to the Fourth Amendment because Mr. Lindsey "refused to pull over immediately despite several opportunities to do so; the police observed [him] make furtive movements as if hiding objects; [he] made a left turn, slowed, and accelerated as if looking for a place to bail and run; [he] refused to speak to the officers when they first approached his vehicle; [he] fumbled with his keys and restarted his engine before turning it off again; and [he] spontaneously disclaimed ownership of the vehicle when the police stated their intent to search it." *Id.*

**B**

Mr. Lindsey later proceeded to a bench trial on a statement of stipulated facts. The district court found Mr. Lindsey guilty of the offense of being a convicted felon in possession of a firearm and ammunition as charged in the indictment.

The probation office prepared a presentence investigation report ("PSI") which recommended a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm "in connection with another felony offense." The PSI explained:

> Law enforcement recovered a loaded Glock pistol, approximately one gram of cocaine, a digital scale with cocaine residue, a box of clear plastic baggies, four $50 bills, and a cellular phone from the defendant's vehicle following a traffic stop. Along with the firearm, the defendant was subsequently arrested for Possession with Intent to Sell, Manufacture, or Deliver a Controlled Substance. Therefore, the offense level is increased by four levels.

Mr. Lindsey objected to the PSI's characterization of the traffic stop and to the four-level enhancement under § 2K2.1(b)(6)(B). The probation office, considering these objections, maintained that the enhancement applied. It reasoned that, although "simple possession of a small amount of a controlled substance, by itself, is insufficient to support the enhancement," Mr. Lindsey "also possessed multiple items indicative of narcotics sales in conjunction with the

firearm and the cocaine"—for example, "a digital scale with cocaine residue, a box of clear plastic baggies, and $200 in currency (separated into $50 increments)."

At the sentencing hearing, the district court asked whether Mr. Lindsey disputed that the officers found these items in the car, as well as a handgun that was "close to" 1 gram of cocaine. Mr. Lindsey's counsel responded that he did not.

The district court found that "the underlying felony has been proven by a preponderance of the evidence that it was possession with intent to distribute." D.E. 128 at 13. Accordingly, the court overruled Mr. Lindsey's objection and found that the four-level enhancement under § 2KW.2(b)(6)(B) applied. The court calculated a sentencing range of 130 to 162 months of imprisonment. The court then sentenced Mr. Lindsey to a term of 150 months.

## II

### A

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the court's factual findings for clear error. *See id.* And we review de novo the court's application of the law to those facts. *See id.* "Further, when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

"A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern" and withstands clear-error review.  *See Cooper v. Harris*, 581 U.S. 285, 293 (2017). When reviewing the district court's credibility determinations, testimony is "considered incredible as a matter of law" where it is "'unbelievable on its face, i.e., testimony as to facts that [the witness] could not have possibly observed or events that could not have occurred under the laws of nature.'" *United States v. Thompson*, 422 F.3d 1285, 1291 (11th Cir. 2005) (quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)).  We may affirm on any ground supported by the record. *See United States v. Macrina*, 109 F.4th 1341, 1347 (11th Cir. 2024).

**B**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. CONST. amend. IV. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  Under the automobile exception, law enforcement may conduct a warrantless search of a vehicle if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007).

Probable cause exists if "under the totality of the circumstances, there is a fair probability that contraband or evidence of a

crime will be found in the vehicle." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006) (quotations omitted). "The principal components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In determining whether he has probable cause, a police officer "may draw inferences based on his own experience[.]" *Id.* at 700. A court should evaluate an officer's probable cause to search a vehicle based on the "facts and circumstances" that are "known" to the officer at the time of the search. *Id.* at 696. "A police officer's subjective reasons for a search do not control the legal justification for his actions, as long as objective circumstances justify the search." *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011).

On appeal, Mr. Lindsey argues that the district court erred in finding that the police officers had probable cause to conduct a warrantless search of the vehicle. He contends that the officers, at most, had a suspicion but not probable cause to support a belief that he had contraband or evidence of a crime in the car. Additionally, Mr. Lindsey argues that the court made several clearly erroneous factual determinations to support its probable cause finding. On this record, we disagree.

Mr. Lindsey has not shown that the district court erred in finding probable cause. We do not agree with Mr. Lindsey that his

actions, "individually or together," reflect only that he was "nervous and made a couple small errors in judgment that did not arise to the level of probable cause." Appellant's Br. at 19. The court did not clearly err in finding that Mr. Lindsey—among other things—continued to drive after the police officers attempted to effectuate a traffic stop; turned his car off, then on, then off again when the officers were outside of his car; and spontaneously disclaimed ownership of the vehicle to the officers. Under Supreme Court precedent, police officers are permitted to take into account a person's nervous and evasive behavior when evaluating probable cause. *See District of Columbia v. Wesby*, 583 U.S. 48, 60 (2018). Additionally, "deliberately furtive actions and flight at the approach of . . . law officers are *strong* indicia of mens rea" and also may be factored into the totality of the circumstances when police officers evaluate probable cause. *See id.* at 59 (quoting *Sibron v. New* York, 392 U.S. 40, 66 (1968)) (quotation marks omitted). Although law enforcement's cameras did not capture Mr. Lindsey running the stop sign or the evasive conduct to which Officer Morgan and Officer Marcoux testified at the suppression hearing (such as whether Mr. Lindsey was "hiding" things in the car while he continued to drive instead of immediately stopping for the traffic stop), we conclude that the court did not clearly err in crediting the officers' testimony. Neither officer's testimony is "incredible as a matter of law" because it is neither about "facts that [the witness] could not have possibly observed" nor about "events that could not have occurred under the laws of nature." *See Thompson*, 422 F.3d at 1291 (quoting *Rivera*, 775 F.2d at 1561).

We also are not persuaded by Mr. Lindsey's argument that the district court "ignored that the majority of [his] behavior was entirely innocent," such as his "shifting the car into park after he forgot." Appellant's Br. at 21. The totality of the circumstances, on the record before us, is sufficient to affirm the district court's probable cause determination.

We affirm the district court's denial of Mr. Lindsey's motion to suppress.[1]

## III

"We review a district court's interpretation and application of the Sentencing Guidelines de novo." *United States v. James*, 135 F.4th 1329, 1332 (11th Cir. 2025), *cert. denied*, ___ S. Ct. ___, 2026 WL 922527 (Apr. 6, 2026) (No. 25-6267). But we review a district court's factual finding that a defendant possessed a firearm "in connection with" another felony offense for clear error. *See id.* "A factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of evidence." *United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir. 2015). For the purposes of sentencing, a district court's factual finding must be supported by a preponderance of the evidence. *See United States v. Brooks*, 112 F.4th 937, 947 (11th Cir. 2024) (explaining that the sentencing court must

---

[1] Because we affirm the denial of Mr. Lindsey's motion to suppress based on the district court's proper finding of probable cause, we need not reach the government's alternative arguments regarding reasonable suspicion, abandonment, and the exclusionary rule.

considered all "relevant conduct" as defined in § 1B1.3 of the Sentencing Guidelines, which is "broadly defined to include both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence").

For offenses involving unlawful possession of firearms, four levels are added if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." *See* § 2K2.1(b)(6)(B).

On appeal, Mr. Lindsey argues—as he did at the district court—that the undisputed facts in the PSI did not establish by a preponderance of the evidence that he possessed cocaine with the intent to distribute it. He contends that we should "remand because the application of the enhancement was based on the erroneous conclusion that [he] was engaged in drug trafficking (and that the firearm was connected to that purported trafficking), when the evidence does not support that he was trafficking drugs." Appellant's Br. at 24. In addition, Mr. Lindsey argues on appeal that "[b]ecause the parties and the court were relying on Application Note 14(b)'s special 'close proximity' rule to support the enhancement . . . this Court should vacate [his] sentence and remand for proceedings consistent with the Court's newest guidance." *Id.*[2]

---

[2] The parties cite, and we consider, the Sentencing Guidelines that were in effect at the time of Mr. Lindsey's December 3, 2024, sentencing hearing.

Application Note 14(B) states that the four-level enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." § 2K2.1 cmt. n. 14(B).

We have held that a court should not defer to the commentary of a guideline provision unless the text of the guideline is ambiguous. *See United States v. Dupree*, 57 F.4th 1269, 1273, 1276–77 (11th Cir. 2023) (en banc). *See also James*, 135 F.4th at 1336 (concluding that § 2K2.1(b)(6)(B) was "unambiguous with respect to the instant case, based on the plain meaning of 'in connection with' and precedent," and so there was no "need to consider, let alone defer to, the Application Notes to subsection (b)(6)(B)").

Assuming without deciding that the district court erred in deferring to Application Note 14(B), Mr. Lindsey has not shown that the district court clearly erred in applying the enhancement. The record reflects that Mr. Lindsey knowingly possessed the firearm and that it was more likely than not that he engaged in trafficking cocaine. That the loaded firearm was in the car near cocaine and drug paraphernalia—including a digital scale with cocaine residue—permits a finding that Mr. Lindsey had the gun available in case his drug trafficking was threatened. *See James*, 135 F.4th at 1336 (holding that the district court did not "clearly err in its determination that [the defendant] possessed the gun in connection with another felony offense" and affirming the application of the four-level § 2K2.1(b)(6)(B) sentencing enhancement where the

defendant had carried a gun during a drug sale, which "has the potential to facilitate the trafficking of drugs"). *See also Brooks*, 112 F.4th at 950 ("hold[ing] that a defendant possesses a firearm 'in connection with another felony offense,' § 2K2.1(b)(6)(B) . . . if it facilitates, or has the potential of facilitating, the other offense"); *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013) (explaining that, "[w]hen considering a firearm's *potential* use, there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened") (quotations and citation omitted). Accordingly, we reject Mr. Lindsey's challenge to the enhancement.

## IV

We affirm Mr. Lindsey's conviction and sentence.

**AFFIRMED.**